UNITED SOCIAL AND MENTAL HEALTH SERVICES, INC. *v.* ALMA RODOWICZ
(AC 26116)

Bishop, DiPentima and West, Js.

Argued March 21—officially released June 13, 2006

*Kathleen M. Cerrone,* with whom was *Mark R. Brouillard,* for the appellant-appellee (plaintiff).

*Joseph S. Rodowicz, Jr.,* for the appellee-appellant (defendant).

*Opinion*

BISHOP, J. The plaintiff tenant, United Social and Mental Health Services, Inc., appeals, and the defendant landlord, Alma Rodowicz, cross appeals from the judgment of the trial court. On appeal, the plaintiff claims that the court improperly determined that it was a holdover tenant at the expiration of its lease.[1] On cross appeal, the defendant claims, in essence, that the court improperly determined that (1) when the plaintiff became a holdover tenant in November, 1997, it was obligated to pay the defendant only the fair rental value of the premises, (2) the plaintiff was not liable for its failure to maintain the premises after the lease expired in October, 1997, and (3) the plaintiff was not obligated to repair the sprinkler system prior to the lease's expiration in 1997. We affirm the judgment of the trial court.

The following factual and procedural history are germane to our discussion of the issues on appeal. The plaintiff and the defendant entered into a lease, effective November 1, 1987, through which the plaintiff leased certain premises owned by the defendant in Plainfield for a term of ten years. According to article IV-C and schedule B of the lease, the only means by which the plaintiff could renew the lease was by notifying the

---

[1] The plaintiff also claims, for the first time on appeal, that the court improperly determined that the parties did not ratify the plaintiff's 1997 option to renew the lease. We decline to review this claim because it was neither pleaded in the plaintiff's complaint nor raised before the trial court. "[T]he principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . Furthermore, [i]t is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Citation omitted; internal quotation marks omitted.) *Neff* v. *Johnson Memorial Hospital*, 93 Conn. App. 534, 538 n.6, 889 A.2d 921 (2006).

defendant "of its intentions within six (6) months of the expiration of this [l]ease or any extension thereof."

On October 29, 1997, the defendant's attorney sent a letter on behalf of the defendant to the plaintiff acknowledging that the parties had come to an agreement, through which the plaintiff would become a holdover tenant and pay a reduced rent of $4710 per month. The correspondence also noted that the parties were working toward creating a new lease and, until that time, the plaintiff would be bound by the terms of the original lease. The court found that although the plaintiff never responded to this correspondence, the plaintiff later referred to the new arrangement as a month-to-month tenancy and remitted rent in the amount of $4710 per month to the defendant for the next five years.

By letter dated October 23, 2002, the plaintiff informed the defendant of its intent to renew the lease for an additional five year term. The defendant rejected the request to renew on the ground that the plaintiff had failed to seek a renewal within the six months prior to the expiration of the lease and demanded that the plaintiff vacate the premises. In this letter, the defendant also demanded that the plaintiff remit $5200 per month until it vacated the premises and perform certain maintenance of the building, as purportedly required by the original lease.

The plaintiff, while protesting this increase, remitted rent of $5200 to the defendant and commenced this action seeking specific performance of the lease, a decree setting the correct monthly rent, an injunction and attorney's fees. The defendant responded by filing a counterclaim seeking damages because the plaintiff had committed waste and had failed to clean and maintain the premises.

The court found that the parties' original lease had expired in October, 1997, when the plaintiff failed to

renew the lease in accordance with the terms of schedule B of the lease agreement. Finding no evidence that the parties had agreed to create a new lease or to continue the terms of the original lease, the court held that as of November 1, 1997, the plaintiff became a holdover tenant. The court also found that, absent evidence of the parties' intent to the contrary, the plaintiff was not bound by the terms of the original lease. Accordingly, the court held that the plaintiff, as a holdover tenant, was obligated to pay only the reasonable rental value of the property, as determined by the last agreed on rent. Thus, the court held that the plaintiff was "entitled to the differential in rent from the $5200 it was paying from the $4710 it had agreed on from November 1, 2002, to the date of [the] judgment."

The court also held that the plaintiff could recover for certain structural repairs it made to the premises because it found that the plaintiff was under no obligation to maintain or to repair the premises after the lease expired on October 31, 1997. As to the defendant's claim that the plaintiff had failed to repair and to maintain the sprinkler system during the time period from November 1, 1987, through October 31, 1997, when the lease was in effect, the court found that the lease did not define clearly which party would be responsible for the repair and maintenance of the sprinkler system. The court resolved the ambiguity in the lease against the defendant, as the party who drew the contract, and held that the plaintiff was due the amount it paid to repair and to maintain the sprinkler system during the period that the lease was effective. This appeal followed.

I

The plaintiff claims that the court improperly held that it was a holdover tenant at the expiration of its lease with the defendant in October, 1997, because it

failed to exercise the option to renew the lease properly and the parties failed to reach an agreement creating a new tenancy. We disagree.

"Whether an option in a lease to renew has been exercised is a question of fact for the trial court, which looks to the intent of the parties as expressed in their words and deeds. . . . This court will not disturb the trial court's factual findings provided the evidence supports those findings." (Citation omitted.) *Perrotti* v. *Chiodo*, 21 Conn. App. 288, 290, 573 A.2d 342 (1990).

In this instance, we find no fault with the court's reasoning that although the plaintiff remained on the premises and remitted to the defendant an amount the parties mutually agreed on, the plaintiff's holdover did not constitute a renewal or extension of the lease. Cf. *Warner Associates* v. *Logan*, 50 Conn. App. 90, 96, 718 A.2d 48 (1998). Indeed, the record reveals that the lease contained an option to renew, which required the plaintiff to notify the defendant, in writing, of its intent to renew the lease within the six months prior to the expiration of the lease, that the plaintiff failed to provide such notice and that the parties did not reach an agreement creating a new lease. Thus, the court properly held that the plaintiff continued in possession of the premises as a holdover tenant after the expiration of its lease on October 31, 1997.

## II

On cross appeal, the defendant first claims that the court improperly held that when the plaintiff became a holdover tenant in November, 1997, it was obligated to pay only the fair rental value of the premises. Specifically, the defendant invites this court to adopt a common-law rule from other jurisdictions that a holdover tenant is obligated to pay an increased rent once given notice of the increase by the defendant. We decline the invitation.

In *Welk* v. *Bidwell*, 136 Conn. 603, 609, 73 A.2d 295 (1950), our Supreme Court expressly rejected this common-law rule adopted in other jurisdictions and held, rather, that a tenant at sufferance is obligated "to pay the reasonable rental value of the property which he occupied." Id. "[A] tenant becomes a tenant at sufferance at the moment his or her rightful possession terminates. A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his [or her] right thereto has terminated." (Internal quotation marks omitted.) *Federal Home Loan Mortgage Corp.* v. *Van Sickle*, 52 Conn. App. 37, 42, 726 A.2d 600 (1999). Because, in this instance, the plaintiff became a tenant at sufferance when the parties failed to renew the lease or enter into a new agreement, the plaintiff was obligated to pay only the fair rental value for its occupancy of the premises. Thus, the defendant's claim is without merit.[2]

### III

Next, the defendant claims that the court improperly held that the plaintiff was not liable for its failure to maintain the premises, as required under the lease agreement, after the lease expired in October, 1997. The record belies this claim.

It is axiomatic that "[i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 456, 889 A.2d 850 (2006).

---

[2] We note that the defendant has not challenged the court's determination of the reasonable rental value of the premises.

As we have noted, the record establishes that the defendant and the plaintiff did not reach an agreement as to a new lease after the original lease expired in October, 1997. Accordingly, the court correctly held that the terms of the original lease regarding the maintenance and repair of the premises did not apply to the plaintiff as a holdover tenant.

IV

Finally, the defendant claims that the court improperly held that the plaintiff was not obligated to repair the sprinkler system prior to the lease's expiration in 1997. We disagree.

Article VI (A) of the original lease provided that the plaintiff was to make all repairs to maintenance items and that the defendant would be responsible for all structural repairs. The court found, however, that the lease did not define what was to be considered a structural repair and, thus, the lease was ambiguous as to whether the sprinkler system constituted a structural repair.

"We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract effect according to its terms. . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter." (Citations omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC,* 273 Conn. 724, 735, 873 A.2d 898 (2005). When the "relevant contract language is ambiguous, [t]he determination of the intent of the parties to a contract . . . is a question of fact subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Santana* v. *Hartford,* 94 Conn. App. 445, 465, 894 A.2d 307 (2006).

There was ample evidence in the record for the court's finding that the lease was ambiguous as to whether the sprinkler system was a structural item, and the court properly construed the ambiguity against the defendant, as the drafter of the agreement. Accordingly, the court's finding that the plaintiff was not obligated to repair the sprinkler system pursuant to the lease was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.