HOUSING AUTHORITY OF THE CITY OF NEW HAVEN
*v.* PATRICIA DEROCHE
(AC 27983)

DiPentima, McLachlan and Dupont, Js.

Argued October 14, 2008—officially released January 27, 2009

*Max F. Brunswick,* for the appellant (defendant).

*Kathryn Sylvester,* with whom, on the brief, were *G. Adam Schweickert* and *Robert W. Chesson,* for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, Patricia DeRoche, appeals from the judgment of the trial court rendered in favor of the plaintiff, the housing authority of the city of New Haven. On appeal, the defendant claims that the court improperly (1) denied her motion to dismiss the summary process complaint, (2) denied her motion for an order to render judgment in accordance with a stipulation and (3) refused to issue a capias. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are necessary for our discussion. In November, 2004, the defendant entered into a written lease with the plaintiff to rent an apartment located at 11 Wayfarer Street. This property was one of six connected row houses. Approximately thirty people resided in these six houses. On May 15, 2005, the New Haven fire department responded to a fire in the defendant's apartment. The kitchen and adjoining areas sustained significant damage before the fire was extinguished.

A few days after the fire, Edward Moore, the acting manager of the plaintiff, conducted an interview with

the defendant. The defendant informed Moore that on the night of the fire, she had been celebrating her birthday and had drunk two bottles of Dom Perignon champagne. She had turned on the kitchen stove, had gone upstairs to the bedroom and had fallen asleep. The entry of firefighters into the apartment had awakened the plaintiff from her slumber. Moore testified that the apartment was not habitable after the fire and that the repairs totaled approximately $11,500.[1]

On June 24, 2005, the plaintiff sent a four page pretermination notice to the defendant stating that she had violated the lease agreement and certain statutes. Specifically, the letter stated that the defendant had violated six sections of the lease agreement, as well as General Statutes §§ 47a-11,[2] 47a-32[3] and 47a-15.[4] The basis for the claims of lease and statutory violations was the fact that the defendant had been intoxicated and started a fire. The pretermination notice also raised a statutory claim of serious nuisance, alleging that the defendant's conduct presented "an immediate and serious danger to the safety of other tenants or the landlord." See General Statutes § 47a-15 (2) (C). On July

[1] Moore initially testified that the costs for the repairs to the apartment were $14,500. He later acknowledged that this incorrect total was the result of his miscalculation and that the correct cost was approximately $11,500.

[2] General Statutes § 47a-11 provides in relevant part: "A tenant shall . . . (f) not wilfully or negligently destroy, deface, damage, impair or remove any part of the premises or permit any other person to do so; (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance, as defined in section 47a-32, or a serious nuisance, as defined in section 47a-15 . . . ."

[3] General Statutes § 47a-32 provides: "In any action of summary process based upon nuisance, that term shall be taken to include, but shall not be limited to, any conduct which interferes substantially with the comfort or safety of other tenants or occupants of the same or adjacent buildings or structures."

[4] General Statutes § 47a-15 provides in relevant part: "For the purposes of this section, 'serious nuisance' means . . . (C) conduct which presents an immediate and serious danger to the safety of other tenants or the landlord . . . ."

22, 2005, the plaintiff served the defendant with a notice to quit possession of the apartment on or before August 4, 2005.

The plaintiff served the defendant with a three count complaint on August 9, 2005. The complaint alleged that the defendant had caused the fire, thereby conducting herself in a manner that violated the terms of her lease (count one), conducted herself in a manner that constituted a nuisance in violation of §§ 47a-11 and 47a-32 (count two) and conducted herself in a manner that constituted a serious nuisance in violation of §§ 47a-11 and 47a-15.

At the conclusion of the plaintiff's case, the defendant orally moved to dismiss the case. Specifically, she argued that the pretermination notice was insufficient and that the court therefore lacked subject matter jurisdiction. The court reserved its decision on the defendant's motion, and the defendant proceeded with her case.

On August 11, 2006, the court issued two memoranda of decision. The first addressed the defendant's motion to dismiss. The court concluded that the pretermination notice was legally sufficient and denied the motion to dismiss. The second memorandum of decision focused on the merits of the plaintiff's actions. It stated: "The court finds that the plaintiff offered sufficient evidence and testimony to permit the court to find that the defendant violated the proscribed tenant behavior as alleged in counts one and two of the complaint." The court additionally made a finding that the defendant "was intoxicated at the time of the fire and that she ignited her stove, intending to cook food, went upstairs to her bedroom and fell asleep." It further found that "it is more probable than not that the ensuing fire was proximately caused by the negligent acts of the defendant" and that such conduct "presented an immediate and

serious danger to the safety of other tenants or the landlord" in violation of § 47a-15. As a result, the court concluded that such conduct constituted a serious nuisance. The court rendered judgment of immediate possession of the apartment in favor of the plaintiff. This appeal followed.[5] Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly denied her motion to dismiss the complaint. Specifically, she argues that the pretermination notice was inadequate and that the court therefore was without jurisdiction to consider the plaintiff's summary process action.[6] We disagree.

---

[5] In its brief, the plaintiff argued that this court lacked subject matter jurisdiction as a result of the defendant's failure to provide a bond with surety to guarantee payment of her portion of the rent within five days of filing her appeal. See General Statutes §§ 47a-35 and 47a-35a. The plaintiff further claimed that as a result of the defendant's failure to comply with this statutory requirement, her appeal should be dismissed.

We are mindful that "[t]he requirement that appeals in summary process actions comply with § 47a-35 is jurisdictional. . . . Therefore, compliance with its mandate is a necessary prerequisite to an appellate court's subject matter jurisdiction." (Citation omitted; internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 488–89, 733 A.2d 835 (1999).

At oral argument, counsel for the defendant informed us that the trial court had waived fees, costs *and security* for the appeal. Our review of the records confirms the accuracy of this statement. Specifically, on August 21, 2006, the court waived the fees, costs and security for the defendant's appeal. Additionally, we note that counsel for the plaintiff conceded at oral argument that if the fee waiver included security, then no bond would be required. We conclude, therefore, that the defendant was not required to post a bond to prosecute her appeal and that we have jurisdiction to consider its merits.

[6] The defendant also appears to claim that the complaint should have been dismissed for failure to make out a prima facie case pursuant to Practice Book § 15-8. We decline to consider this claim, however, because it was briefed inadequately. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Rozbicki* v.

Before addressing the specifics of the defendant's claims, it is helpful to identify the legal principles regarding summary process actions. "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Citations omitted; internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 487–88, 733 A.2d 835 (1999); *Marrinan* v. *Hamer*, 5 Conn. App. 101, 103, 497 A.2d 67 (1985).

Our Supreme Court has stated that "[a]s a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity." *Lampasona* v. *Jacobs*, 209 Conn. 724, 729, 553 A.2d 175, cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989); see generally *Kapa Associates* v. *Flores*, 35 Conn. Sup. 274, 408 A.2d 22 (1979). Simply put, "before a landlord may pursue its statutory remedy of summary process, the landlord must prove compliance with all of the applicable preconditions set by state and federal law for the termination of the lease." *Housing Authority* v. *Harris*, 28 Conn. App. 684, 689, 611 A.2d 934 (1992), aff'd, 225 Conn. 600, 625 A.2d 816 (1993). "In the case of a residential eviction, § 47a-15 provides that under certain circumstances, in which a tenant fails to comply with his or her rental obligations under § 47a-11, the landlord is required to deliver to the tenant a written notice specifying the acts or omissions constituting the

*Statewide Grievance Committee*, 111 Conn. App. 239, 240 n.2, 958 A.2d 812 (2008), cert. denied, 290 Conn. 908, 964 A.2d 544 (2009). We note, however, that if we were to consider this claim, we would conclude that the plaintiff did in fact set forth a prima facie case.

breach and to give the tenant [fifteen] days to abate the violation or risk the termination of the tenancy." (Internal quotation marks omitted.) *Housing Authority* v. *Harris*, 225 Conn. 600, 605, 625 A.2d 816 (1993). This notice requirement, which is strictly construed, must be sufficient to inform the tenant and protect against premature, discriminatory or arbitrary eviction. Id.

We now identify the applicable standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to deny] . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Caruso* v. *Bridgeport*, 285 Conn. 618, 627, 941 A.2d 266 (2008); see also *South Sea Co.* v. *Global Turbine Component Technologies, LLC*, 95 Conn. App. 742, 744, 899 A.2d 642 (2006). Mindful of these principles and guided by our standard of review, we now turn to the specific arguments raised by the defendant.

A

The defendant first argues that the court improperly denied her motion to dismiss counts one and two of the complaint. Specifically, she contends that the pretermination notice failed to "provide for a cure period for the defendant to correct or remedy the lease violations alleged in the first count and the simple nuisance alleged in the second count, as required by . . . § 47a-15 . . . ." The plaintiff counters that the notice provided the information required by § 47a-15. We agree with the plaintiff.

The following additional facts are necessary for our discussion. On June 24, 2005, the plaintiff served the

defendant with a pretermination notice that set forth various violations of the lease and statutes by the defendant. Specifically, it provided that as a result of being intoxicated and starting the fire, the defendant (1) violated state and federal laws, (2) damaged, removed or defaced the property of the plaintiff, (3) failed to take precautions to prevent fires (4) engaged in activity on the plaintiff's property that threatened the health, safety or peaceful enjoyment of the plaintiff's property by other tenants or the plaintiff's employees, (5) altered, defaced or damaged the plaintiff's property, (6) committed criminal activity that threatened the health, safety, and right to peaceful enjoyment of the plaintiff's property by other residents and (7) disturbed the peaceful enjoyment of the plaintiff's property by others or engaged in conduct that constituted a nuisance, which includes conduct that interferes substantially with the comfort and safety of other tenants or occupants of the same or adjacent buildings or structures.

The notice further provided that the defendant's conduct constituted a nuisance in violation of §§ 47a-11 and 47a-32. It then stated: "If you wish to contest this claim regarding your lease and statutory violations, you have the right to discuss this matter at a private conference with the Landlord or request a grievance hearing before an impartial person or panel. If you wish to request a conference or grievance hearing, you must notify the Landlord within fourteen (14) days from the above date, and personally deliver your request and obtain a receipt or mail your request by Certified Mail, Return Receipt Requested, to the Landlord.

"If the above-noted violations can be and are remedied by repair or payment of damages on your part within fifteen (15) days of this notice, no action will be taken against you based on these violations. If however, the above-noted violations cannot be remedied or are not remedied within that fifteen day period, your rental

agreement shall terminate on a date not less [than] 30 days after you receive this notice, which date will be set forth with particularity in a Notice to Quit."

Section 47a-15 provides in relevant part: "Prior to the commencement of a summary process action . . . the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. If such breach can be remedied by repair by the tenant or payment of damages by the tenant to the landlord, and such breach is not so remedied within such fifteen-day period, the rental agreement shall terminate except that (1) if the breach is remediable by repairs or the payment of damages and the tenant adequately remedies the breach within such fifteen-day period, the rental agreement shall not terminate . . . ."

In comparing the language of the pretermination notice with the statutory requirements, it is apparent that the plaintiff complied with its obligation pursuant § 47a-15. The defendant, however, claims that because the pretermination notice also contained a claim of serious nuisance indicating that no cure was possible, the overall effect was that the notice failed to provide a cure period.

We are not persuaded by the defendant's argument that the notice, taken as a whole, did not include the statutorily required information regarding a cure period. We are mindful that summary process statutes are narrowly construed and strictly followed. *Young* v. *Young*, supra, 249 Conn. 488. Our Supreme Court, however, also has stated that "[w]hen good cause for termination of a lease has clearly been shown, and when notices of termination have been sent in strict compliance with statutory timetables, a landlord should

not be precluded from pursuing summary eviction proceedings because of hypertechnical dissection of the wording of the notices that he has sent." *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 145, 520 A.2d 173 (1987). In this case, the pretermination notice complied with the statutory mandate and advised the defendant of her right to cure the lease violations and nuisance within the applicable time period. Although the pretermination notice also stated that it was the plaintiff's position that no cure was possible with respect to the claim of serious nuisance, this statement in no way contradicted or nullified the compliance with § 47a-15. We therefore conclude that the court properly denied the defendant's motion to dismiss counts one and two of the plaintiff's summary process complaint.

## B

The defendant next argues that the court improperly denied her motion to dismiss count three of the complaint. Specifically, she contends that the notice failed to comply with federal regulations that required the plaintiff to afford her an administrative grievance hearing as a precondition to terminating her lease. See 24 C.F.R. § 966.4 (e) (8) (ii) (A).[7] We disagree.

The pretermination notice set forth a claim that the defendant caused a serious nuisance in violation of §§ 47a-11 and 47a-15 as a result of her being intoxicated and starting the fire. It then stated: "Because the violation involves criminal activity, the Landlord may decline to afford you a grievance hearing. If you do not timely request a grievance conference or hearing, of if the requested grievance conference or hearing is resolved

---

[7] Section 966.4 (e) (8) (ii) of title 24 of the Code of Federal Regulations provides in relevant part: "When the [public housing authority] is required to afford the tenant the opportunity for a hearing under the [public housing authority] grievance procedure for a grievance concerning a proposed adverse action: (A) The notice of proposed adverse action shall inform the tenant of the right to request such hearing. . . ."

against you, or if the Landlord chooses not to afford you a grievance hearing, an immediate action against you to recover possession of the premises may be commenced by the Landlord based on serious nuisance as set forth above. A notice to quit terminating your tenancy will precede any action. . . . It is your landlord's position that this lease violation constitutes 'serious nuisance' under . . . [§] 47a-15, and that no cure is possible."

"When a defendant is a tenant of federally subsidized housing, federal law must be followed in addition to state law." *Housing Authority* v. *Martin*, 95 Conn. App. 802, 808, 898 A.2d 245, cert. denied, 280 Conn. 904, 907 A.2d 90 (2006); see also *Farley* v. *Philadelphia Housing Authority*, 102 F.3d 697, 698 (3d Cir. 1996) (in exchange for receiving federal subsidies, local public housing authorities required to operate in compliance with the United States Housing Act, 42 U.S.C. § 1437 et seq. [1994]). Under federal law, a tenant generally must be provided with an administrative hearing before a public housing authority may terminate a lease. "The Secretary shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will . . . (1) be advised of the specific grounds of any proposed adverse public housing agency action; (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (*l*) of this section . . . ." 42 U.S.C. § 1437d (k); see also 24 C.F.R. § 966.4 (e) (8) (ii) and (*l*) (3) (ii).

This right to a hearing, however, is not absolute. See, e.g., *Gilmore* v. *Housing Authority*, 170 F.3d 428, 429–30 (4th Cir. 1999); *Colvin* v. *Housing Authority*, 71 F.3d 864, 867 (11th Cir. 1996). Relevant to the facts presented in this case, a public housing authority may exclude the hearing requirement for an eviction that

involves "[a]ny criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises of other residents . . . ." 24 C.F.R. § 966.51 (a) (2) (i) (A); see also 42 U.S.C. § 1437d (k). The pretermination notice stated that the defendant's actions in starting a fire while intoxicated involved criminal activity and was conduct that presented an immediate and serious danger to the safety of other tenants and the landlord.

The defendant argues that the notice was insufficient because the plaintiff did not cite a criminal statute that she had violated. She further maintains that the evidence established that she had not been arrested or charged with any crimes. As a result, she contends that the general rule requiring a hearing applied. This argument, however, fails to consider 24 C.F.R. § 966.4 (*l*) (5) (iii) (A), which provides: "The [public housing authority] may evict the tenant by judicial action for criminal activity in accordance with this section *if the [public housing authority] determines that the covered person has engaged in the criminal activity, regardless of whether the covered person has been arrested or convicted for such activity and without satisfying the standard of proof used for a criminal conviction.*" (Emphasis added.) Simply put, the plaintiff was not required to claim that the defendant had been arrested or charged with a crime. Furthermore, the regulation does not require the plaintiff to cite the criminal statute that the defendant had violated. As a result of the plaintiff's determination that the defendant had engaged in criminal activity, this matter fell within the exception to the general rule requiring a hearing. The plaintiff complied with the requirements of federal law, and, therefore, the court properly denied the defendant's motion to dismiss count three of the summary process complaint.

## II

The defendant next claims that the court improperly denied her motion for an order to render judgment in accordance with a stipulation. Specifically, she argues that the court should have enforced the settlement agreement between the parties. The plaintiff counters that the parties never reached a settlement agreement and that the court therefore properly denied the motion for an order to render judgment. We agree with the plaintiff.

The following additional facts are necessary for our discussion. The trial to the court commenced on October 25, 2005. Almost immediately after the start of the evidentiary phase, the court learned that the parties had reached a stipulated agreement.[8] The court proceeded to canvass the defendant. During the canvass, counsel for the defendant stated to the court that the plaintiff's counsel would provide information concerning insurance coverage. The plaintiff's counsel immediately noted his disagreement with that statement. The plaintiff's counsel informed the court that any payments received from the defendant would be made known to the insurance company so that there would be no double recovery. Counsel for the defendant responded: "We agreed to the stipulation, Your Honor, because my client remains in possession of the premises, *but I thought we had an understanding that we would get this information.*" (Emphasis added.) Counsel for the plaintiff again stated that the information regarding any insurance payments was "not a part of the agreement . . . ."

---

[8] On October 25, 2005, the parties signed an agreement in which the judgment for possession would enter in favor of the plaintiff, with a stay of execution through October 31, 2008. The defendant agreed to a $10 per month use and occupancy fee and an arrearage of $14,516.50. The defendant further agreed to repay the arrearage with monthly payments of $75. Finally, the defendant stated that she would, no later than thirty days prior to the expiration of the stipulation, negotiate a repayment agreement for the outstanding balance.

Finally, counsel for the defendant stated: "Your Honor, [the defendant] is telling me she believes that knowing what she knows, *she didn't sign the agreement voluntarily.*" (Emphasis added.) After hearing further argument on the matter, the court refused to accept the stipulated agreement of the parties and proceeded to hear evidence and testimony.

Moore testified that afternoon regarding the damage to the apartment caused by the fire. He stated that the total cost of the repairs to the apartment was $14,500. During the next day of testimony, Moore acknowledged that he had made an error in his prior testimony. Specifically, Moore corrected his earlier testimony and stated that the total cost to repair the fire damage in the apartment totaled $11,508 and not $14,500. Moore noted that he had made a mathematical mistake when adding the cost of repairs.

In a motion for an order to render judgment in accordance with the stipulation, dated October 28, 2005, the defendant alleged that "the agreement broke down over the $14,516.50 arrearage, the defendant expressed a belief that she is paying more than the actual damages of the plaintiff." The motion further stated: "Had the correct amount of the arrearage been on the original stipulation, the defendant never would have questioned the amount and the court would have approved the stipulation and entered judgment." The motion concluded that because the plaintiff's mistake caused the rejection of the stipulation, the court should enforce it and render judgment accordingly.

On November 3, 2005, the next day of the trial, the court considered the defendant's motion. Counsel for the defendant argued that had the stipulation contained the correct amount, the defendant would have agreed to it and not raised the issue of potential insurance

payment. Counsel for the plaintiff indicated that settlement was no longer an option. The court concluded that the parties had not reached an agreement and that there was no meeting of the minds. Accordingly, it denied the defendant's motion.

"A settlement agreement is a contract among the parties." (Internal quotation marks omitted.) *Guarnieri* v. *Guarnieri*, 104 Conn. App. 810, 822, 936 A.2d 254 (2007). The existence of a contract presents a question for the trier of fact. *Ravenswood Construction, LLC* v. *F. L. Merritt, Inc.*, 105 Conn. App. 7, 23, 936 A.2d 679 (2007); see also *Connecticut Education Assn., Inc.* v. *Milliman USA, Inc.*, 105 Conn. App. 446, 453, 938 A.2d 1249 (2008). "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 238, 907 A.2d 1274 (2006).

This court has stated that "[i]n order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties." (Internal quotation marks omitted.) *Krondes* v. *O'Boy*, 37 Conn. App. 430, 434, 656 A.2d 692 (1995); see also *United Social & Mental Health Services, Inc.* v. *Rodowicz*, 96 Conn. App. 34, 40, 899 A.2d 85, cert. denied, 280 Conn. 920, 908 A.2d 546 (2006); *Fortier* v. *Newington Group*,

*Inc.*, 30 Conn. App. 505, 510, 620 A.2d 1321 ("[i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met"), cert. denied, 225 Conn. 922, 625 A.2d 823 (1993).

Contrary to the argument of the defendant, the record supports the court's finding that the parties never reached a mutual understanding with respect to the settlement agreement. During the canvass of the defendant, the court quickly discovered a disagreement between the parties with respect to the terms of the settlement. Counsel for the defendant indicated that although his client agreed to the stipulation, they "had an understanding that [they] would get this information [regarding potential payments from the plaintiff's insurance company]." The plaintiff's attorney responded that this information was not part of the agreement and made his disagreement known to the court. Furthermore, the defendant stated that she did not sign the settlement agreement voluntarily. On this basis, we conclude that the court properly found that the parties had not reached a meeting of the minds and therefore properly denied the defendant's motion.

III

The defendant next claims that the court improperly refused to issue a capias.[9] Specifically, she claims that the court abused its discretion when it denied the capias after her witness from the New Haven fire department did not appear during the last day of the trial. We are not persuaded.

The following additional facts are necessary for our discussion. On November 1, 2005, the defendant had a subpoena served on Ray Carbone, the assistant fire

[9] "Upon proof that a witness has been served with notice to appear, the trial court has authority to issue a capias to compel his or her attendance. See General Statutes § 52-143 . . . ." *State* v. *Maldonado*, 193 Conn. 350, 360 n.6, 478 A.2d 581 (1984).

chief of the city of New Haven. This subpoena instructed the keeper of records for the city's fire department to appear on November 3, 2005, and to bring "[a]ll records, reports, notes, memoranda and investigation" concerning the fire in the defendant's apartment on May 15, 2005. No one from the fire department appeared at the trial on November 3, 2005.[10] At the conclusion of evidence on that date, the court noted that it would continue the matter until November 17, 2005, and instructed that "all evidence and testimony that's going to be required to be available at that point in time." Notably, the defendant failed to move for a capias on November 3, 2005.

No one from the fire department appeared on November 17, 2005. On that date, counsel for the defendant informed the court that he had made a telephone call to the fire department and left a voice mail message that morning. He then requested that the court issue a capias. The court denied the request, stating: "I'm aware of the sanctions that are available for the failure to comply [with a subpoena]. But the compliance was required on November 3, not on November 17; that was two weeks ago this party failed to appear, and there has been no request to take any action in regard to the subpoena."

"[General Statutes §] 52-143 authorizes the trial court to issue a capias to compel the appearance of a witness who fails to appear without justification. The statute does not, however, make it *mandatory* for the court to issue a capias when a witness under subpoena fails to appear; issuance of a capias is in the discretion of the court . . . [which] has the authority to decline to issue a capias when the circumstances do not justify

---

[10] Counsel for the defendant informed the court that he had "subpoenaed the fire department but nobody showed up. I have those records, but [opposing counsel] objected on hearsay grounds . . . ."

or require it. . . . Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . [T]he action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Emphasis in original; internal quotation marks omitted.) *State* v. *Payne*, 40 Conn. App. 1, 18, 669 A.2d 582 (1995), aff'd, 240 Conn. 766, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004); see also *DiPalma* v. *Wiesen*, 163 Conn. 293, 298–99, 303 A.2d 709 (1972).

In the present case, the court denied the capias because the defendant failed to move for it at the appropriate time. The witness from the fire department was instructed to appear on November 3, 2005, and failed to do so. The court instructed the defendant to have its witnesses and evidence present on November 17, 2005. The appropriate time to request the capias, therefore, was November 3, 2005. Under these facts and circumstances, we conclude that it was well within the court's discretion to deny the capias. See *State* v. *Payne*, supra, 40 Conn. App. 18–19.

The judgment is affirmed.

In this opinion the other judges concurred.