******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# PRESIDENTIAL VILLAGE, LLC *v.* TONYA PERKINS
## (AC 38459)

DiPentima, C. J., and Keller and Prescott, Js.

*Syllabus*

The plaintiff landlord sought, by way of summary process, to regain posses-
sion of certain federally subsidized premises that it had leased to the
defendant. The plaintiff had provided the defendant with a federal preter-
mination notice based on the defendant's nonpayment of her total rental
obligation, which constituted material noncompliance with the terms
of her lease. The notice included a chart detailing a month-to-month
breakdown of the amount of rent that the defendant owed to the plaintiff.
After the defendant failed to tender any payment to the plaintiff within
the time period specified in the pretermination notice, the plaintiff served
the defendant with a notice to quit possession of the premises and,
thereafter, brought this summary process action, seeking immediate
possession thereof. In response, the defendant filed a motion to dismiss
the action on the ground that the plaintiff's pretermination notice was
defective, and, therefore, the trial court lacked subject matter jurisdic-
tion over the action. The trial court granted the defendant's motion to
dismiss and rendered judgment in favor of the defendant, from which
the plaintiff appealed to this court. *Held* that the trial court improperly
dismissed the summary process action on the ground that the plaintiff's
federal pretermination notice was defective and, therefore, that it lacked
subject matter jurisdiction over the action: the pretermination notice
sufficiently complied with the applicable federal regulations and require-
ments (24 C.F.R. §§ 247.3 and 247.4) governing the termination of a
federally subsidized tenancy based on nonpayment of rent, as the preter-
mination notice provided adequate notice that the defendant's tenancy
was being terminated on the ground of material noncompliance with
the lease based on her nonpayment of rent, and it set forth that ground
with enough specificity to enable the defendant to prepare a defense
to the summary process action; moreover, this court disagreed with the
trial court's findings that the purpose of the pretermination notice was
to provide the defendant with an opportunity to cure her noncompliance
with the lease and that the notice did not comply with the applicable
specificity requirements of the federal regulations because it included
nonrent charges, as the regulations contained no language pertaining
to an opportunity to cure and the inclusion of certain additional nonrent
charges did not render the pretermination notice fatally defective.

Argued February 14—officially released September 19, 2017

*Procedural History*

Summary process action brought to the Superior
Court in the judicial district of Hew Haven, Housing
Session, where the court, *Ecker, J.*, granted the defend-
ant's motion to dismiss and rendered judgment for the
defendant, from which the plaintiff appealed to this
court. *Reversed; further proceedings.*

*Hugh D. Hughes*, with whom was *Barbara M. Schel-
lenberg*, for the appellant (plaintiff).

*Amy Eppler-Epstein*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Presidential Village, LLC, appeals from the judgment of the trial court dismissing its summary process action against the defendant, Tonya Perkins, for lack of subject matter jurisdiction.[1] On appeal, the plaintiff claims that the court improperly granted the defendant's motion to dismiss because the court determined that the federal pretermination notice[2] was defective, and the defective notice deprived the court of subject matter jurisdiction to hear the case. Because its decision mistakenly rests primarily on its determination that the federal termination notice was defective under the requirements of General Statutes § 47a-23, we reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On March 2, 2010, the defendant leased an apartment from the plaintiff. The dwelling unit is located in New Haven and was subsidized by the United States Department of Housing and Urban Development (department). According to the department's model lease agreement entered into by the parties, the defendant's lease term began on March 2, 2010, ended on February 28, 2011, and continued thereafter from month-to-month. At the time the defendant signed the lease, she agreed to pay a rent of $377 on the first day of each month, which was subject to change during the lease term in accordance with the amount the department made available monthly on behalf of the defendant.

On January 14, 2015, the plaintiff sent a federal pretermination notice[3] to the defendant based on her nonpayment of rent in January, 2015, at which time the defendant's monthly rent was $1402.[4] The notice addressed to the defendant stated:

"RE: PAST DUE RENT

| Inv. No | Inv. Date | Due Date | Inv. Amount | Balance |
|---------|-----------|----------|-------------|---------|
|  | 08/27/2013 | 08/27/2013 | $1,797.56 | $1,797.56 |
| 10 | 09/01/2013 | 09/11/2013 | $93.00 | $93.00 |
| CHFA201321 | 10/01/2013 | 10/11/2013 | $93.00 | $93.00 |
| 2014-1232 | 11/01/2014 | 11/11/2014 | $1,402.00 | $1,402.00 |
| 2014-1340 | 12/01/2014 | 12/11/2014 | $1,402.00 | $1,402.00 |
| 2014-1455 | 01/01/2015 | 01/11/2015 | $1,402.00 | $1,402.00 |

Total Rental Obligation: **$6,189.56**"

Immediately following this table are four paragraphs of text:

"You have violated the terms of your lease in that you failed to pay your rent, in the total rental obligation of **$6,189.56**. Your failure to pay such rent constitutes a material noncompliance with the terms of your lease.

"We hereby notify you that your lease agreement may be subject to termination and an immediate eviction . . . proceeding initiated by our office. We value our tenants and request that you immediately contact our office, regarding full payment of your rental obligations.

Your rental obligations will include the delinquent rent, late fees, utilities, legal fees, and any other eviction proceeding sundry cost[s].

"You have the right within ten days after receipt of this notice or within ten days after the date following the date this notice was mailed whichever is earlier to discuss the proposed termination of your tenancy with your landlord's agent . . . .

"If you remain in the premises on the date specified for termination, we may seek to enforce the termination by bringing judicial action at which time you have a right to present a defense."

The defendant did not discuss the possible termination of her tenancy with the plaintiff's agent during the ten day period nor did she tender any payment to the plaintiff within that time. Accordingly, on January 29, 2015, the plaintiff served the defendant with a notice to quit possession of the premises and, thereafter, in February, 2015, brought a summary process action for nonpayment of rent, seeking immediate possession of the premises.

In response to the plaintiff's summary process complaint, the defendant filed a motion to dismiss on the ground that the pretermination notice was defective, and, therefore, the court lacked subject matter jurisdiction. The alleged defects included the plaintiff's "failure to specify accurately the amount that must be paid by [the] defendant to cure the default underlying the threatened eviction." Specifically, the defendant alleged that the pretermination notice "inaccurately—and misleadingly—states that she will be evicted unless she promptly pays the landlord *$6189.56* in 'total rental obligations,' when, in truth, she would have avoided eviction for nonpayment of rent, under well established Connecticut law, by tendering a cure amount of only *$2804* . . . ." (Emphasis in original; footnote omitted.)

In response, the plaintiff argued that the pretermination notice was not defective. To support its argument, the plaintiff asserted that there was "nothing defective about a pretermination notice that lists the total financial obligations owed by [the] defendant to [the] plaintiff." The plaintiff further contended that "a federal pretermination notice fully complies with the law if it includes the specific information supporting the landlord's right to termination; a notice does not become defective simply because it contains more information than strictly necessary."

On September 28, 2015, the trial court, *Ecker, J.*, issued a memorandum of decision granting the defendant's motion to dismiss the summary process action for lack of subject matter jurisdiction because the pretermination notice was defective. The plaintiff then filed this appeal. Additional facts will be set forth as necessary.

We begin our analysis by identifying the legal principles governing summary process actions. "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] land-

lords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed.

"[B]efore a landlord may pursue its statutory remedy of summary process, the landlord must prove compliance with all of the applicable preconditions set by state and federal law for the termination of the lease." (Citations omitted; internal quotation marks omitted.) *Housing Authority* v. *DeRoche*, 112 Conn. App. 355, 361–62, 962 A.2d 904 (2009).

We now turn to the applicable standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss [is] de novo." (Internal quotation marks omitted.) *Beecher* v. *Mohegan Tribe of Indians of Connecticut*, 282 Conn. 130, 134, 918 A.2d 880 (2007). Mindful of these principles and guided by our standard of review, we address the specific claim raised by the plaintiff on appeal.

The plaintiff claims that the court improperly dismissed the summary process action because the court determined that the federal pretermination notice was defective. With respect to this claim, the plaintiff argues that its pretermination notice complied with the applicable federal regulations governing the termination of a federally subsidized tenancy based on nonpayment of rent. We note that the adequacy of a federal pretermination notice based on nonpayment of rent is an area of the law that rarely has been addressed by the appellate courts of this state. Nevertheless, applying established principles of summary process law, we conclude that the trial court improperly dismissed the action because the federal plaintiff's pretermination notice sufficiently complies with the federal requirements.

In its memorandum of decision, the court determined that the plaintiff's pretermination notice was defective because it was "misleading in at least two respects. First, $6189.56 is not the amount that [the defendant] would have needed to pay to avoid the termination of [the defendant's] tenancy for nonpayment of rent under Connecticut law. . . . Second, the plaintiff's notice uses the term 'rental obligations' as a synonym for 'rent,' as in, 'you failed to pay your rent in the total rental obligation of $6,189.56.' This is not true, as a matter of law. . . . The plaintiff concedes that the $6189.56 figure includes charges for attorney's fees and expenses,

as well as late charges. It is no secret among most landlords (nor even, perhaps, sophisticated tenants) that the term 'rent' is a term of art in housing law. . . . 'Rent' under [§ 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f et seq. (Section 8)][5] means the amount that may be charged for the right to occupy the dwelling unit, period—it cannot include charges for late payments, utilities, attorney's fees, property damage, or any other item. . . . The plaintiff's pretermination notice lumps together rent and nonrent items in a single category ('total rental obligation'), and then impermissibly defines that obligation as 'rent.' ('[Y]ou failed to pay your rent, in the total rental obligation of $6,189.56.') The misleading phrase ('rental obligation') is repeated throughout the pretermination notice, and its definition continues to expand to include items that federal law says cannot be treated as rent." (Citations omitted; footnote omitted.) The court granted the defendant's motion to dismiss the plaintiff's summary process action on the basis of those defects, including its noncompliance with state law.

We emphasize that the trial court's primary concern regarding the alleged defective nature of the pretermination notice was based on its finding that the notice failed to comply with both the state requirements and the federal requirements. Although the pretermination notice must comply with the federal requirements pursuant to 24 C.F.R. § 247, there is nothing in those federal requirements that mandates that the notice also comply with the state requirements governing the notice to quit under § 47a-23. See 24 C.F.R. §§ 247.3 and 247.4. The only notice at issue in this case was the federal pretermination notice. We, therefore, emphasize that the dipositive issue in this appeal is whether the pretermination notice complies with the federal requirements, namely, 24 C.F.R. § 247.

We begin by setting forth the relevant legal principles that govern the termination of a federally subsidized tenancy. When a defendant is a tenant of federally subsidized housing, federal law must be followed. *Farley* v. *Philadelphia Housing Authority*, 102 F.3d 697, 698 (3d Cir.1996) (in exchange for receiving federal subsidies, local public housing authorities required to operate in compliance with United States Housing Act). The federal regulations pertinent to this case are set forth in 24 C.F.R. §§ 247.3 and 247.4.

Pursuant to 24 C.F.R. § 247.3, to terminate a tenancy in federally subsidized housing, the federal regulations require adequate notice detailing the grounds for termination. See *Housing Authority* v. *Martin*, 95 Conn. App. 802, 808, 898 A.2d 245 ("[u]nder federal law, 42 U.S.C. § 1437d (*l*) . . . a landlord is required to issue a pretermination notice before commencing a summary process action"), cert. denied, 280 Conn. 904, 907 A.2d 90 (2006). Pursuant to the federal regulations, a landlord may terminate a federally subsidized tenancy on the ground of "[m]aterial noncompliance with the rental agreement

. . . ." 24 C.F.R. § 247.3. "The term material noncompliance with the rental agreement includes [inter alia] . . . [n]on-payment of rent or any other financial obligation due under the rental agreement (including any portion thereof) beyond any grace period permitted under State law, except that the payment of rent *or any other financial obligation due under the rental agreement* after the due date, but within the grace period permitted under State law, constitutes a minor violation." (Emphasis altered.) 24 C.F.R. § 247.3 (c).

In applying 24 C.F.R. § 247.3 to the present case, we conclude that the plaintiff's pretermination notice provided adequate notice detailing the ground for termination. Specifically, the pretermination notice states that the plaintiff was proposing to terminate the defendant's tenancy based on nonpayment of rent. As nonpayment of rent constitutes a material noncompliance with the rental agreement under 24 C.F.R. § 247.3, the plaintiff's pretermination notice set forth a sufficient ground to terminate the defendant's federally subsidized tenancy. See 24 C.F.R. § 247.3. Because we conclude that the plaintiff's purpose for termination of the defendant's tenancy complies with 24 C.F.R. § 247.3, we next analyze whether the contents of the pretermination notice also complies with the federal requirements pursuant to 24 C.F.R. § 247.4.

The requirements for a valid pretermination notice are contained in 24 C.F.R. § 247.4, which provides that the pretermination notice must "be in writing and shall: (1) State that the tenancy is terminated on a date specified therein; (2) state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense; (3) advise the tenant that if he or she remains in the leased unit on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant in the manner prescribed by paragraph (b) of this section." Pursuant to § 247.4 (e), the specificity requirement is satisfied "[i]n any case in which a tenancy is terminated because of the tenant's failure to pay rent," where the notice states "the dollar amount of the balance due on the rent account and the date of such computation . . . ."[6] 24 C.F.R. § 247.4 (e).

We conclude that the contents of the plaintiff's pretermination notice substantially complies with the applicable federal requirement pursuant to 24 C.F.R. § 247.4. In particular, the pretermination notice reflects that the ground for terminating the defendant's tenancy, i.e., material noncompliance with the lease based on nonpayment of rent, was set forth with enough specificity to enable her to prepare a defense to the judicial action. See 24 C.F.R. § 247.4 (a). The pretermination notice provides the dollar amount of the balance due on the rent account, i.e., $6189.56, and the date of such computation, as required by 24 C.F.R. § 247.4 (e) to satisfy the specificity requirement in nonpayment of rent cases.

The pretermination notice also provides a chart that illustrates the amount the defendant owed in past due rent, breaking down that amount for each month of past due rent. The chart includes the specific amount of past due rent from August, 2013 to October, 2013, and from November, 2014 to December, 2014, and January, 2015, which was the month upon which the plaintiff was seeking to terminate the defendant's tenancy. As the federal regulations permit the plaintiff to terminate the defendant's federally subsidized tenancy on the ground of a material noncompliance, which includes the nonpayment of rent due and any other financial obligations under the rental agreement, the month-to-month breakdown of the amount of past due rent that the defendant owes to the plaintiff was set forth with enough specificity to enable her to prepare a defense to the termination action. See 24 C.F.R. § 247.4 (a).

The court's memorandum of decision indicates two reasons that the pretermination notice was in fact defective. For the reasons that follow, we disagree with both contentions.

First, the trial court's decision expressly stated that the purpose of the pretermination notice was "to provide the Section 8 tenant with an opportunity to cure the noncompliance that otherwise will result in termination of the tenancy."[7] There is no support for the court's interpretation within the federal regulations governing the pretermination notice. In particular, 24 C.F.R. § 247.4 (a) expressly provides that the pretermination notice must "state the reasons for the landlord's action with enough specificity so as to enable the tenant to *prepare a defense* . . . ." (Emphasis added.) Thus, an explicit requirement of 24 C.F.R. § 247.4 (a) is for the pretermination notice to enable the tenant to prepare a defense to the judicial action.[8] Notably, the language of 24 C.F.R. § 247.4 (a) *does not* require that the pretermination notice inform the tenant of the amount necessary to cure the breach of the lease. In fact, there is no language within the federal regulations pertaining to the opportunity to cure. Therefore, as "judicial appraisal of a landlord's compliance with . . . federal requirements for [notice] of termination must reflect the purpose that the [notice] . . . was meant to serve"; *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 145, 520 A.2d 173 (1987); we are convinced that the plaintiff's pretermination notice sufficiently complied with 24 C.F.R. § 247.4 as it provided enough specificity for the reasons of termination to enable the defendant to prepare a defense.

The trial court also concluded that the pretermination notice did not comply with the federal regulations' specificity requirement because it included nonrent charges, i.e., late fees and attorney's fees.[9] In its decision, the trial court explicitly relied on *Housing Authority & Urban Redevelopment Agency* v. *Taylor*, 171 N.J. 580, 595, 796 A.2d 193 (2002), noting that "[r]ent under Section 8 means the amount that may be charged for the

right to occupy the dwelling unit, period—it cannot include charges for late payments, utilities, attorney's fees, property damage, or any other item." (Internal quotation marks omitted.) It continued by noting: "The fundamental purpose of the federal housing assistance programs is to make housing available to low-income tenants, and federal law strictly regulates the maximum rent payable by the tenant. See 42 U.S.C. § 1437a (a) (1) (establishing the well-known 30 [percent] formula, which typically fixes rent at 30 [percent] of a family's adjusted gross income). This formula only works if the term rent has a stable and uniform meaning." (Internal quotation marks omitted.) In following *Taylor*, the court concluded that the inclusion of late fees, utilities, legal fees and any other eviction proceeding sundry cost stated in the pretermination notice was prohibited from being considered as part of the tenant's "rent" under federal law.

We disagree with the trial court's reliance on *Taylor*. Specifically, *Taylor* addresses the ability to recover late fees, attorney's fees and utility fees under 42 U.S.C.A § 1437a (a) (1) (known as the Brooke Amendment), which limits the amount of rent that public housing tenants can be charged. *Housing Authority & Urban Redevelopment Agency* v. *Taylor*, supra, 171 N.J. 583. In *Taylor*, the public housing authority sought to evict a tenant for nonpayment of rent as well as additional amounts that it included in the category of rent, which consisted of late fees, utility fees, and attorney's fees. Id., 594 (specifically discussing amount of rent that public housing tenants can be charged under 42 U.S.C.A. § 1437a [a] [1]). The Supreme Court of New Jersey, however, concluded that "federal law strictly defines and limits the amount of rent that a public housing authority may charge its tenants," and, therefore, the public housing authority "may not recover attorney's fees and late charges as additional rent in a summary dispossess proceeding." Id., 595. Thus, the additional charges that were "not tenant rent due under the lease" could not "be considered or treated as rent, and therefore [could not] serve as the basis for a summary dispossess action *for nonpayment of rent*." (Emphasis added.) Id.

We note that *Taylor* does not address the adequacy of a pretermination notice under 24 C.F.R. §§ 247.3 and 247.4. Rather, *Taylor* focuses solely on 42 U.S.C.A § 1437a (a) (1), which limits the amount of rent that public housing tenants can be charged. Id., 583. In the present case, the pretermination notice included sums that constitute other financial obligations due under the lease, the nonpayment of which constitutes material noncompliance with the lease agreement. We fail to see how the inclusion of that information rendered the notice inadequate.

Even if we were to agree with the trial court, that the analysis in *Taylor* of what constitutes rent bears upon the adequacy of the pretermination notice, how-

ever, we would conclude that the inclusion of these additional nonrent charges did not render the pretermination notice fatally defective. See *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 142, 145 (deficiency in federal termination notice required under 24 C.F.R. § 247 was minor deviation from language of federal regulations and did not deprive court of subject matter jurisdiction over summary process action).

For the foregoing reasons, the trial court improperly concluded that the pretermination notice was defective and, therefore, deprived the court of subject matter jurisdiction to hear the case.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] Originally, this appeal was one of three summary process actions, *Renaissance Management Co.* v. *Mills*, Superior Court, judicial district of New Haven, Housing Session, Docket No. CV-14-0117624-S (September 28, 2015), *How WH, LLC* v. *Robinson*, Superior Court, judicial district of New Haven, Housing Session, Docket No. CV-15-0119932-S (September 28, 2015), and *Presidential Village, LLC* v. *Perkins*, Superior Court, judicial district of New Haven, Housing Session, Docket No. CV-15-0118752-S (September 28, 2015), that were consolidated on appeal. The two other appeals were withdrawn prior to oral argument. We, therefore, only address *Presidential Village, LLC*, in this appeal.

[2] This appeal concerns the federal termination notice pursuant to 24 C.F.R. § 247. The validity of the plaintiff's state statutory notice to quit pursuant to General Statutes § 47a-23 is not at issue in the present case.

[3] As the trial court noted, "[i]n the present context, the term 'pretermination notice' refers to the notice that must be provided, under federal law, before a landlord is permitted to initiate eviction proceedings against a tenant who occupies federally subsidized housing." Therefore, the reference to pretermination notice herein, is the termination notice required by federal law.

[4] Although the defendant also failed to pay rent from August, 2013 to October, 2013, and from November, 2014 to December, 2014, both parties agree that the plaintiff sought to terminate the defendant's lease based solely on her failure to pay rent in January, 2015. See General Statutes § 47a-23 (d) (landlord may terminate month-to-month tenancy for nonpayment of rent only for current month and immediately preceding month).

[5] The trial court observed: "Section 8 refers to the Housing Act of 1937, although what are now called Section 8 programs were not created until almost forty years later, with the enactment of the Housing and Community Development Act of 1974. Section 8, as amended, is codified at 42 U.S.C. § 1437f et seq. There are many different Section 8 programs in existence. The specific program at issue in the present case . . . is a project based program. In general, the Section 8 rental assistance programs can be categorized as either tenant based or project based. There are various programs within each of these two categories, and the variations themselves have spawned subvariations and permutations. . . . The Department of Housing and Urban Development . . . has issued publications intended to provide guidance regarding occupancy and termination issues in connection with various Section 8 programs."

[6] The date of the computation of the dollar amount of the balance due on the rent account is not challenged in the present case.

[7] Specifically, the trial court noted in its memorandum of decision: "Both parties readily acknowledge that one of the fundamental purposes served by the federal requirement of a pretermination notice is to provide the Section 8 tenant with an opportunity to cure the noncompliance that otherwise will result in termination of the tenancy." As discussed subsequently in this opinion, we reach a contrary conclusion.

[8] There is a significant distinction between an opportunity to cure and an opportunity to prepare a defense. An opportunity to cure provides the tenant a route to avoid the initiation of a summary process action. See *Housing Authority* v. *DeRoche*, supra, 112 Conn. App. 361–62; see also *Housing Authority* v. *Martin*, supra, 95 Conn. App. 813–14. Once the summary process action is initiated, however, the payment of past due sums will not

prevent the eviction if the landlord chooses to proceed with the action. See *Housing Authority* v. *DeRoche*, supra, 361–62 An opportunity to prepare a defense, in contrast, assumes that a summary process action will be initiated. See 24 C.F.R. § 247.

[9] Before the trial court, the plaintiff's counsel conceded to the improper inclusion of nonrent charges in the pretermination notice. Specifically, the trial court's memorandum of decision provided: "[The] plaintiff's counsel explained that the $1323.80 charge was for attorney's fees and costs relating to a prior, unsuccessful action, and never should have been charged to [the defendant]. The parties do not agree whether the balance of the first listed item ($1797.56 - 1323.80 = $497.56) represents unpaid rent or something else."

———————————————————