## Blanche E. Lampasona *v.* Steve Jacobs
## (13281)

Peters, C. J., Healey, Shea, Covello and Hull, Js.

Argued November 4, 1988—decision released January 31, 1989

*Joseph E. Moukawsher,* for the appellant (plaintiff).

*John C. Driscoll,* for the appellee (defendant).

ARTHUR H. HEALEY, J. In this case, the plaintiff appeals the dismissal of her case for lack of subject matter jurisdiction after it had been remanded by the Appellate Court for further proceedings in the trial court. The plaintiff claims that the trial court erred in dismissing the case because it looked beyond the question of subject matter jurisdiction and decided the motion to dismiss on the merits of the case. The plaintiff claims further that the court's interpretation of the term "resident," as used in General Statutes § 21-64, in its determination on the motion, violated her constitutional rights.

On April 26, 1984, the plaintiff initiated this action, seeking to gain possession of lot No. 10 in the Briarwood Park mobile home facility in Montville. The plaintiff alleged that the defendant was occupying lot No. 10 without "right or privilege" and that the plaintiff had served a notice to quit possession upon the defendant on April 12, 1984. The plaintiff sought possession of the property because the eight day time limit for the defendant to quit possession under General Statutes § 47a-23 (a)[1] had expired and the defendant remained on the property.

---

[1] General Statutes § 47a-23 (a) provides: "NOTICE TO QUIT POSSESSION OF PREMISES. FORM. SERVICE. (a) When a rental agreement or lease of any land or building or of any apartment in any building, or of any dwelling unit, or of any trailer, or any land upon which a trailer is used or stands, whether in writing or by parol, terminates by lapse of time, or by reason of any expressed stipulation therein, or under the provisions of section 47a-15a, or as a result of a violation of section 47a-11, or where such premises, or any part thereof, is occupied by one who has no right or privilege to occupy such premises, or where one originally had the right or privilege to occupy such premises but such right or privilege has terminated, and the owner or lessor, or his legal representatives, or his attorney-at-law, or in-fact, desires to obtain possession or occupancy of the same, at the termination of the rental agreement or lease, if any, or at any subsequent

On May 7, 1984, the defendant entered an appearance pro se and answered the complaint. The defendant claimed that he was a lawful resident of Briarwood Park and, therefore, could not be evicted. On June 26, 1984, present defense counsel filed an appearance on behalf of the defendant, and on July 11, 1984, defense counsel filed a motion to dismiss alleging that the court did not have subject matter jurisdiction over the plaintiff's action because the notice to quit was defective. The defendant claimed that the eight day notice to quit was insufficient under the dictates of General Statutes § 21-80, which requires notice of sixty days.[2] The defendant argued that § 21-80, rather than § 47a-23, applied because the defendant was a mobile home park resident.

In a memorandum of decision dated July 26, 1984, the trial court, *Walsh, J.,* granted the motion to dismiss that was filed on July 11. From this dismissal for

time, he or they shall give notice to the lessee or occupant to quit possession of such land, building, apartment or dwelling unit, at least eight days before the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy.''

[2] General Statutes § 21-80 (b) (3) (B) reads as follows: "Notwithstanding the provisions of section 47a-23, termination of any tenancy in a mobile manufactured home park shall be effective only if made in the following manner . . .

"By the owner giving the resident at least sixty days' written notice, which shall state the reason or reasons for such termination, except that,. when termination is based upon subparagraph (A) of subdivision (1) of this subsection, the owner need give the resident only thirty days' written notice, which notice shall state the total arrearage due provided, the owner shall not maintain or proceed with a summary process action against a resident who tenders the total arrearage due to the owner within such thirty days and who has not so tendered an arrearage under this subparagraph during the preceding twelve months.''

The motion to dismiss filed on July 11 actually was the defendant's second motion to dismiss. The first motion was filed on June 26, but only claimed that the plaintiff's notice to quit lacked sufficient notice under General Statutes § 47a-23 (a). The court, *Hurley, J.,* denied that motion on July 10, 1984. The defendant then filed the second motion, which made reference to General Statutes § 21-80 as well as § 47a-23.

lack of subject matter jurisdiction, the plaintiff appealed to the Appellate Court, raising the same issues that are presented in this appeal. The Appellate Court, however, did not reach the substantive issues raised, but set aside the judgment and instructed the lower court to hear testimony and take evidence before making a finding on the court's jurisdiction. *Lampasona* v. *Jacobs,* 7 Conn. App. 639, 642–43, 509 A.2d 1089 (1986).

On remand, the defendant again raised his motion to dismiss. The court, *O'Connell, J.,* heard testimony and admitted exhibits of the parties and, on August 13, 1987, again granted the motion to dismiss. In response to a motion to articulate, the court made clear that it dismissed the case because the defendant was a resident of the mobile home park and thus the plaintiff's notice to quit was insufficient under § 21-80. The court ruled that the defective notice to quit deprived it of subject matter jurisdiction over the claim. The plaintiff then filed this appeal.

At the center of the plaintiff's appeal to this court is his attack on the Superior Court's finding that the defendant was a resident of the plaintiff's mobile home park. Because of this finding, the trial court concluded that the mobile home statute was applicable and summary process against the defendant was controlled by § 21-80 as opposed to the general summary process statute, § 47a-23. The plaintiff claims that in making its finding the trial court improperly examined the merits of the action and also that its ruling violated the plaintiff's constitutional rights. We disagree with the plaintiff's contentions.

The plaintiff's first claim is that the court erred by examining the merits of the case to determine whether the defendant was a resident of the mobile home park and thus whether he was protected by § 21-80. The

plaintiff suggests that this analysis by the court exceeded the usual scope of a determination of the court's jurisdiction over the subject matter.

In determining whether a court lacks subject matter jurisdiction, the inquiry usually does not extend to the merits of the case. *GHK Exploration Co.* v. *Tenneco Oil Co.,* 857 F.2d 1388, 1392 (10th Cir. 1988); *State* v. *S & R Sanitation Services, Inc.,* 202 Conn. 300, 301, 521 A.2d 1017 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 92, 513 A.2d 124 (1986); *Davis* v. *Board of Education,* 3 Conn. App. 317, 320, 487 A.2d 1114 (1985). In order to establish subject matter jurisdiction, the court must determine that it has the power to hear the "general class [of cases] to which the proceedings in question belong." *Shea* v. *First Federal Savings & Loan Assn. of New Haven,* 184 Conn. 285, 288, 439 A.2d 997 (1981); *Davis* v. *Board of Education,* supra. In some cases, however, it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear. See *Castro* v. *Viera,* 207 Conn. 420, 433–35, 541 A.2d 1216 (1988) (discussing subject matter jurisdiction of an agency). Such an examination was necessary in this case.

There is no doubt that the Superior Court is authorized to hear summary process cases; the Superior Court is authorized to hear all cases except those over which the probate courts have original jurisdiction. General Statutes § 51-164s. The jurisdiction of the Superior Court in summary process actions, however, is subject to a condition precedent. Before the court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit. *Sandrew* v. *Pequot Drug, Inc.,* 4 Conn. App. 627, 631, 495 A.2d 1127 (1985), citing *O'Keefe* v. *Atlantic Refining Co.,* 132 Conn. 613, 622, 46 A.2d 343 (1946); *Abbenante* v. *Giampietro,* 75 R.I. 349, 353, 66 A.2d 501 (1949); 50 Am. Jur. 2d, Land-

lord and Tenant § 1205. This is true under both the general summary process statute, General Statutes § 47a-23 (a), and under the mobile home summary process provision, General Statutes § 21-80. As a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity.

Although this court has not previously addressed the jurisdictional nature of the notice to quit provision in the mobile home statute, we have held other statutory time limitations and notice requirements to be conditions precedent to court actions and thus to be jurisdictional. See, e.g., *Tucker* v. *Maher,* 192 Conn. 460, 469, 472 A.2d 1261 (1984) (notice to all who could be affected by declaratory judgment is jurisdictional necessity); see *Connecticut Steel Co.* v. *National Amusements, Inc.,* 166 Conn. 255, 262–63, 348 A.2d 658 (1974) (action to foreclose mechanic's lien must be brought within statutory time limit or court lacks jurisdiction); see also *Glenn Chaffer, Inc.* v. *Kennedy,* 37 Conn. Sup. 654, 658, 433 A.2d 1018 (1981) (notice of condominium conversion is jurisdictional necessity for eviction action).[3] The Superior Court has held that the notice requirements of the general summary process statute; General Statutes § 47a-23; are jurisdictional. *Windsor Properties,*

---

[3] For administrative appeals, we have held that compliance with statutory requirements is essential to valid administrative jurisdiction. *Basilicato* v. *Department of Public Utility Control,* 197 Conn. 320, 324, 497 A.2d 48 (1985) (failure to include a proper citation and serve a party of record renders administrative appeal jurisdictionally defective); *Cavallaro* v. *Durham,* 190 Conn. 746, 747, 462 A.2d 1042 (1983) (failure to give notice of zoning commission hearing is jurisdictional defect); *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 518, 418 A.2d 883 (1979) (proper notice of administrative hearing is jurisdictional necessity); *Vegliante* v. *New Haven Clock Co.,* 143 Conn. 571, 580, 124 A.2d 526 (1956) (notice of workers' compensation claim must be served on commissioner within statutory time limit or commissioner lacks jurisdiction); see *Home National Bank & Trust Co.* v. *Banking Commission,* 26 Conn. Sup. 362, 365–66, 224 A.2d 404 (1966) (failure to give proper notice of proposed bank organization deprives banking commission of jurisdiction).

*Inc.* v. *Great Atlantic & Pacific Tea Co.,* 35 Conn. Sup. 297, 301, 408 A.2d 936 (1979). This is in accord with a number of other states. See, e.g., *Lichtentag* v. *Burns,* 258 So. 2d 211, 212–13 (La. App.), cert. denied, 259 So. 2d 916 (1972); *Dickens* v. *Hall,* 104 N.M. 173, 175, 718 P.2d 683 (1986); *Rosen* v. *Wade,* 99 Misc. 2d 1114, 1115, 418 N.Y.S.2d 258 (1979).

Therefore, because proper notice to quit is a jurisdictional necessity, in order to determine whether there was proper notice in this case the court had to determine which summary process provision, §§ 47a-23 or 21-80, controlled. The dispositive question in resolving which summary process scheme applied was whether the defendant was such a resident of the plaintiff's mobile home park. If he was such a resident, § 21-80 applied and the notice to quit had to be for a duration of sixty days, and if he was not a resident, the general summary process provision, § 47a-23, applied and an eight day notice to quit would have been sufficient.

The court, *O'Connell, J.,* on remand, found that the defendant was the owner of a mobile home in the plaintiff's park and, thus, under the definition contained in General Statutes § 21-64 (5), the defendant was a resident of the park. As a resident, the court applied the summary process procedure for mobile home park residents pursuant to § 21-80 and found that the plaintiff had not given the defendant the required sixty day notice to quit under subsection (b) (3) (B). Upon its finding, the court dismissed the plaintiff's case for lack of subject matter jurisdiction and did not rule on the merits of the plaintiff's constitutional claims.

The court's construction of § 21-64 (5) and its finding that the defendant was a resident were correct. In our recent decision in *Thompson* v. *Merlino Enterprises, Inc.,* 208 Conn. 656, 661, 545 A.2d 1094 (1988), we construed the broad definition of resident in § 21-64 (5)

and stated that mere ownership of a mobile home in a mobile home park is sufficient to qualify one as a park resident.[4] Although the plaintiff vigorously contends that such a definition of a resident is inequitable under the circumstances of this case, the language of the statute is clear and we are not inclined to depart from the recent construction of that statute in *Thompson*.

Furthermore, the plaintiff argues that the inequity in construing the defendant to be a resident of the plaintiff's park amounts to a violation of the plaintiff's constitutional rights. Specifically, the plaintiff suggests that to deem the defendant a resident of the park amounts to an unconstitutional taking of the plaintiff's land in violation of the fifth amendment to the United States constitution and article first, § 11, of the constitution of Connecticut. We disagree.

The plaintiff contends that the statute as applied is unconstitutional because the defendant is occupying a mobile home in the park without the plaintiff's consent. The trial court, however, found that the plaintiff had an affirmative duty, presumably under General Statutes § 21-79,[5] to give the defendant an application to

---

[4] The plaintiff acknowledged at oral argument that the defendant does hold legal title to a mobile home in the plaintiff's park.

[5] General Statutes § 21-79 provides in part: "OWNER PROHIBITED FROM RESTRICTING RESIDENT'S RIGHT TO SELL. (a) No owner or operator of a mobile manufactured home park shall require a resident who owns a mobile manufactured home which is safe, sanitary and in conformance with aesthetic standards to remove the home from the development at the time such mobile manufactured home is sold or a mortgage on such a home is foreclosed provided that the purchaser or foreclosing mortgagee shall assume and be bound by the rental agreement of the foreclosed mortgagor and shall be bound by the rules and regulations of the park.

"(b) A mobile manufactured home shall be presumed to be safe and sanitary if it is established that the mobile manufactured home was constructed in accordance with any nationally recognized building or construction code or standard. Failure to meet any such standard or the provisions of any such code shall not automatically raise a presumption that the mobile manufactured home is unsafe or unsanitary. Such failure shall not be used

purchase the home in the plaintiff's park and, in acting on the application, the plaintiff had a duty to state

as a reason for withholding approval of an on-site sale unless such failure renders the mobile manufactured home unsafe or unsanitary.

"(c) The owner of a mobile manufactured home park shall bear the burden of showing that a mobile manufactured home is unsafe, unsanitary, or fails to meet the aesthetic standards of the development. No aesthetic standard concerning those physical characteristics such as size, original color or original building materials, which cannot be changed without undue financial hardship to the resident, shall be applied against a mobile home.

"(d) Any purchaser of a mobile manufactured home sold by a resident may become a resident of the mobile manufactured home park provided he meets the entry requirements for said park and such requirements are equally applied by the owner to all purchasers and prospective residents and the owner approves such entry. Such approval may not be withheld except for good cause. For the purposes of this section good cause means a reasonable cause for the owner to believe (1) that such purchaser intends to utilize the purchased mobile manufactured home for an illegal or immoral purpose or for any purpose that would disturb the quiet enjoyment of the other residents of the park or (2) that the purchaser is or will be financially unable to pay the rent for the space or lot upon which the purchased mobile manufactured home is located. If the owner denies approval to a purchaser, he shall, in writing, state any reason for such disapproval. Such statement shall be delivered to the resident and the purchaser or prospective resident within ten days after the owner receives the completed application of the purchaser or prospective resident. Failure to deliver such notification within ten days shall be deemed to be approval.

"(e) Any resident wishing to sell his or her home shall request a written statement of the owner's intentions regarding the condition of the home. Within twenty days after receipt of such a request, the owner shall approve the home's condition for resale or deliver a written statement to the resident specifying the reasons why the home is not safe, sanitary, or in conformance with aesthetic standards. Failure of the owner to respond within twenty days shall be deemed to be an approval of the home's condition for resale. If the resident disputes the owner's response, he may seek a declaratory ruling from the department of consumer protection. The resident may attempt to correct defects identified by the owner and may again request the owner's approval of the home's condition for resale. If the resident again disputes the owner's response, he may once again seek a declaratory ruling from the department. An owner's statement of approval shall remain in force for not more than six months. No owner shall exact a commission or fee with respect to the price realized by the seller, unless he has acted as agent for the seller in a sale pursuant to a written contract, or charge a rent for the mobile manufactured home space or lot upon which the purchased mobile manufactured home is located greater than the prevailing rent for any other space or lot located in the park."

her reasons for granting or denying it. The plaintiff did not do this and therefore acquiesced to the defendant's residency in the park. We find no error in the trial court's finding. Thus, the plaintiff did not have her property unconstitutionally taken. Furthermore, our very recent holdings make it clear that the requirements of § 21-79 governing the resale of mobile homes do not violate the plaintiff's constitutional rights as a mobile home park owner. *Daddona* v. *Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 247, 550 A.2d 1061 (1988); *Thompson* v. *Merlino Enterprises, Inc.*, supra, 662; *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, 208 Conn. 620, 650, 546 A.2d 805 (1988).

In sum, despite the plaintiff's disagreement with our precedent, *Daddona, Thompson* and *Eamiello* are controlling on the plaintiff's constitutional claims in this case. The court did not err in its characterization of the defendant as a resident of the plaintiff's park and its application of the mobile home statute to the case. As stated previously, because we find the notice to quit requirement in General Statutes § 21-80 to be a jurisdictional necessity to a proper summary process action, the court properly dismissed the case upon finding a defect in the plaintiff's notice to quit. The court was without subject matter jurisdiction to hear the action.

There is no error.

In this opinion the other justices concurred.