******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PRESIDENTIAL VILLAGE, LLC *v.*
# TONYA PERKINS ET AL.
## (SC 20043)

Robinson, C. J., and Palmer, McDonald,
D'Auria, Mullins and Kahn, Js.

*Syllabus*

Pursuant to federal regulation (24 C.F.R. § 247.4 [2018]), a landlord must provide notice to a tenant in federally subsidized housing before an eviction proceeding may be commenced, the notice must state the reasons for the landlord's action with enough "specificity" so as to enable the tenant to prepare a defense, and, when the basis of the action involves the nonpayment of rent, the notice must state the dollar amount of the balance due on the "rent account" and the date of such computation in order to satisfy the requirement of specificity.

The plaintiff landlord brought a summary process action against the defendant tenant, seeking immediate possession of the premises solely on the ground of nonpayment of rent. In 2010, the defendant signed a one year lease with the plaintiff, which owns and manages a housing development in which the rental units are subsidized by the Department of Housing and Urban Development (HUD). Pursuant to the terms of that lease, the defendant remained in the apartment after the first year on a month-to-month basis. In the plaintiff's summary process action, which it brought in February, 2015, the plaintiff alleged that, on January 1, 2015, the defendant failed to pay the rent of $1402 then due. Prior to initiating the action, the plaintiff had sent a pretermination notice to the defendant in accordance with HUD regulations. The pretermination notice provided: "[Y]ou failed to pay your rent, in the total rental obligation of [$6189.56]. Your failure to pay such rent constitutes a material noncompliance with the terms of your lease." The notice further provided: "Your rental obligations will include the delinquent rent, late fees, utilities, legal fees, any other eviction proceeding sundry cost." The defendant filed a motion to dismiss, claiming that the pretermination notice was defective and, therefore, that the trial court lacked subject matter jurisdiction. The defendant contended, inter alia, that the cure amount of $6189.56 in the pretermination notice varied from the alleged nonpayment of $1402 in rent that formed the basis for termination of the tenancy. The trial court granted the motion to dismiss, concluding that the notice was defective because it contained legally impermissible and factually inaccurate grounds for termination and that the defective notice deprived it of subject matter jurisdiction. The plaintiff appealed to the Appellate Court, which reversed the trial court's judgment, concluding that the pretermination notice was not jurisdictionally defective. The Appellate Court reasoned that the trial court improperly incorporated state summary process law in determining that the notice was defective and that the notice should have been assessed solely in relation to the requirements of federal law, specifically, that portion of 24 C.F.R. § 247.4 requiring only the dollar amount of the balance due on the rent account and the date of such computation. The Appellate Court determined that the plaintiff's notice complied with that federal requirement because all of the charges listed therein were amounts for either past due rent or other financial obligations due under the lease. The Appellate Court rejected the defendant's contention that the balance due on the rent account was limited to the amount of the unpaid rent that supported the nonpayment of rent ground alleged in the plaintiff's complaint. On the granting of certification, the defendant appealed to this court. *Held* that the Appellate Court improperly reversed the trial court's judgment of dismissal, as the plaintiff's inclusion in the pretermination notice of undesignated charges for obligations other than unpaid rent rendered that notice jurisdictionally defective: the common meaning of the term "rent," as gleaned from dictionaries, federal housing statutes, federal regulations applicable to subsidized housing, and the HUD handbook, led this court to conclude that the term "rent account" in 24 C.F.R. § 247.4 is limited to rent charges and does not encompass utilities,

costs for repairs, late fees, and attorney's fees, and such a construction of the regulation furthered the purpose of the specificity requirement therein, which was to enable the tenant to prepare a defense, and also reflected the fact that occupancy in subsidized housing is in the nature of a welfare entitlement and that such tenants are entitled to basic substantive and procedural protections; accordingly, the requirement that the pretermination notice specify the dollar amount of the balance due on the rent account was not met in the present case, as the notice was not limited to unpaid rent, which the plaintiff alleged as the only reason for the proposed termination of the tenancy, and did not designate which of the charges were assigned to rent and which were assigned to obligations other than rent; moreover, the plaintiff could not prevail on its claim that any defect in a pretermination notice is not jurisdictional and requires that the defendant demonstrate prejudice, this court having determined that notice must be sufficiently accurate for the tenant to understand and defend against the allegations and that, if a notice is inaccurate to the point that a tenant's ability to prepare a defense is impaired, the notice is not effective.

Argued October 9, 2018—officially released June 18, 2019

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New Haven, Housing Session, where the court, *Ecker, J.*, granted the named defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *DiPentima, C. J.*, and *Keller* and *Prescott, Js.*, which reversed the trial court's judgment and remanded the case for further proceedings, and the named defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Amy Eppler-Epstein*, with whom was *Shelley White*, for the appellant (named defendant).

*David E. Schancupp*, with whom was *Hugh D. Hughes*, for the appellee (plaintiff).

*J.L. Pottenger, Jr.*, filed a brief for the Jerome N. Frank Legal Services Organization et al. as amici curiae.

*Opinion*

McDONALD, J. This summary process action concerns the degree of specificity required in the pretermination notice[1] that, pursuant to regulations promulgated by the federal Department of Housing and Urban Development (HUD), must be provided to a tenant who resides in federally subsidized housing before the landlord may commence an eviction proceeding against that tenant. Specifically, the issue presented is whether a pretermination notice asserting nonpayment of rent as the ground for the proposed termination of the tenancy is jurisdictionally defective if it includes either rent charges that cannot serve as a basis for termination of the tenancy under state summary process law or undesignated charges for obligations other than rent. The trial court concluded that the inclusion of both types of charges renders the notice jurisdictionally defective. The Appellate Court concluded that state law is irrelevant to the legal sufficiency of such a notice, and that the inclusion of charges other than for rent is not a material defect under federal law. *Presidential Village, LLC* v. *Perkins*, 176 Conn. App. 493, 500, 506, 170 A.3d 701 (2017).

The defendant tenant, Tonya Perkins,[2] appeals, upon our grant of certification, from the Appellate Court's judgment reversing the judgment of the trial court dismissing the summary process action initiated by the plaintiff landlord, Presidential Village, LLC. We conclude that the inclusion of undesignated charges for obligations other than rent rendered the notice jurisdictionally defective. Accordingly, we reverse the Appellate Court's judgment.

The record reveals the following undisputed facts and procedural history. The plaintiff is a private company that owns and manages Presidential Village, a housing development in New Haven in which the rental units are subsidized by HUD through a project based Section 8[3] program intended to benefit low income families. Tenants are responsible for a portion of the rent, based on a percentage of their income and other factors; HUD makes monthly payments to the plaintiff to make up the difference between the tenant's portion of the rent and the full market rent. If a tenant fails to provide information relevant to the determination of the tenant's share of the rent, which may be periodically adjusted as circumstances change, the tenant may be required to pay the market rent.[4] See generally United States Dept. of Housing & Urban Development, HUD Handbook 4350.3 Rev-1: Occupancy Requirements of Subsidized Multifamily Housing Programs (November, 2013) (HUD Handbook).

In March, 2010, the defendant signed a HUD model lease for an apartment in Presidential Village for a term beginning March 2, 2010, and ending February 28, 2011,

*and thereafter "continu[ing]" for successive terms of one month . . . ."* (Emphasis added.) The lease set the defendant's rent at $377 per month; it did not indicate the amount of HUD's subsidy or the market rate for the unit. The lease provides that the defendant's rent may increase (or decrease) for various reasons, including a change in her income.[5]

In February, 2015, the plaintiff commenced the present summary process action against the defendant, seeking immediate possession of the premises, solely on the ground of nonpayment of rent. The complaint alleged that the defendant's monthly rent was $1402, the defendant's portion of that rent was $1402,[6] and, on January 1, 2015, the defendant failed to pay the rent then due and payable.

The complaint further alleged the procedures undertaken by the plaintiff prior to initiating the action. Specifically, it alleged that, on January 14, 2015, with the January rent still unpaid, the plaintiff sent a pretermination notice to the defendant, in accordance with HUD regulations, regarding her past due rent. It further alleged that, on January 29, 2015, with the rent still unpaid, the plaintiff served a notice to quit on the defendant. Both notices were attached as exhibits to the complaint. Relevant to the present case, the pretermination notice stated as follows:

"You have violated the terms of your lease in that you failed to pay your *rent, in the total rental obligation of $6,189.56*. Your failure to pay such *rent* constitutes a material noncompliance with the terms of your lease.

"We hereby notify you that your lease agreement may be subject to termination and an immediate eviction proceeding, initiated by our office. We value our tenants and request that you immediately contact our office, regarding full payment of your rental obligations. *Your rental obligations will include the delinquent rent, late fees, utilities, legal fees, and any other eviction proceeding sundry cost.*

"You have the right within ten days after receipt of this notice or within ten days after the date following the date this notice was mailed whichever is earlier to discuss the proposed termination of your tenancy with your landlord's agent[7] . . . .

"If you remain in the premises on the date specified for termination, we may seek to enforce the termination by bringing judicial action at which time you have a right to present a defense." (Emphasis added.)

The defendant filed a motion to dismiss the plaintiff's summary process complaint on the ground that the pretermination notice was defective and, therefore, that the court lacked subject matter jurisdiction. The alleged defects were (1) a variance in the cure amount requested in the pretermination notice ($6189.56) and the alleged nonpayment that is the basis of the com-

plaint ($1402), which contravenes federal laws regulating the pretermination notice, as articulated in the HUD Handbook and state case law, and (2) the notice's allegations of violations of leases that are no longer in effect, which violate Connecticut summary process law.

In its opposition to the motion, the plaintiff argued that the pretermination notice was not defective. It asserted that there was nothing defective about a pretermination notice that lists the total financial obligations owed by the defendant to the plaintiff. The plaintiff further contended that a federal pretermination notice fully complies with the law if it includes the specific information supporting the landlord's right to termination; a notice does not become defective simply because it contains more information than strictly necessary.

The trial court granted the defendant's motion to dismiss. The court determined that the notice was defective because it contained legally impermissible and factually inaccurate grounds for termination. The trial court explained that one purpose of the pretermination notice is to provide the tenant with the opportunity to cure. The present notice did not provide this opportunity because it was misleading in at least two ways. First, the notice informed the defendant that she had to pay $6189.56 in order to prevent eviction when, under state summary process law, payment of a far lesser amount, $2804 (rent for December, 2014, and January, 2015), would have prevented the only eviction that could have been initiated based on that particular notice.[8] See General Statutes § 47a-23 (d). Second, the notice included charges as "rental obligations" that did not qualify as "rent." The trial court noted that the plaintiff had conceded that the $6189.56 in "rental obligations" included approximately $1300 in attorney's fees for which the defendant was not even liable,[9] and that it could not account for another portion of one of the charges listed. The trial court concluded that the defective notice deprived it of subject matter jurisdiction and rendered a judgment of dismissal.

The plaintiff appealed to the Appellate Court. The Appellate Court reversed the judgment, holding that the pretermination notice was not jurisdictionally defective. *Presidential Village* v. *Perkins*, supra, 176 Conn. App. 494. The Appellate Court determined that the trial court improperly incorporated state summary process law in determining that the notice was defective. Id., 499–500. The Appellate Court held that the notice must be assessed solely in relation to the requirements of federal law; id., 500; under which a pretermination notice for nonpayment of rent required only "the dollar amount of the balance due on the rent account and the date of such computation . . . ." (Internal quotation marks omitted.) Id., 502, quoting 24 C.F.R. § 247.4 [e] (2017). The Appellate Court determined that the plaintiff complied with this requirement because all of the

charges listed in the pretermination notice were amounts for either past due rent or other financial obligations due under the lease. Id., 502–503.

The Appellate Court rejected the defendant's argument that the balance due on the "rent account" was limited to the amount of unpaid rent that supported the nonpayment of rent ground alleged in the complaint. Id., 503–504. It agreed with the plaintiff that, irrespective of whether the notice may have misled the defendant as to the amount needed to cure the violation of the lease agreement, the federal notice requirement is intended only to allow the tenant to prepare a defense against the summary process action, not to afford an opportunity to cure noncompliance and thereby avoid such an action.[10] Id. Finally, the Appellate Court noted that, even if it were to agree with the trial court that the inclusion of nonrent charges was relevant, it would view the inclusion of such charges as insufficient to render the pretermination notice "fatally defective." Id., 506, citing *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 142, 145, 520 A.2d 173 (1987).

We then granted the defendant's petition for certification to appeal to this court. Although the certified questions are framed in relation to whether state summary process law is relevant to the propriety of the federal notice; see *Presidential Village, LLC* v. *Perkins*, 327 Conn. 974, 174 A.3d 193 (2017);[11] we conclude that, because the notice is jurisdictionally defective even if measured solely by reference to federal law, we need not consider whether, and the extent to which, state law would be relevant.

In reviewing the Appellate Court's determination that the trial court improperly granted the defendant's motion to dismiss, we are guided by the following well established principles. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss [is] de novo." (Internal quotation marks omitted.) *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 316, 138 A.3d 257 (2016).

"There is no doubt that the Superior Court is authorized to hear summary process cases; the Superior Court is authorized to hear all cases except those over which the probate courts have original jurisdiction. General Statutes § 51-164s. The jurisdiction of the Superior Court in summary process actions, however, is subject to [certain] condition[s] precedent." *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175, cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989). "[B]efore a landlord may pursue its statutory remedy

of summary process . . . the landlord must prove its compliance with all the applicable preconditions set by state and federal law for the termination of a lease." *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 143; see, e.g., *Lampasona* v. *Jacobs*, supra, 729 ("[a]s a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity"); *Lampasona* v. *Jacobs*, supra, 729 ("we have held other statutory time limitations and notice requirements to be conditions precedent to court actions and thus to be jurisdictional").

The record establishes that the preconditions required under state summary process law were met; there is no claim to the contrary. The plaintiff timely served the notice to quit alleging nonpayment of rent, and alleged in its complaint that the defendant had failed to pay rent due January 1, 2015, in the amount of $1402. See footnote 8 of this opinion.

Federal law, however, imposes additional preconditions in order to terminate a Section 8 tenancy. The purpose of these requirements is to afford due process and avoid arbitrary or discriminatory termination. See *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 143–45; see also *Anderson* v. *Denny*, 365 F. Supp. 1254, 1260 (W.D. Va. 1973); *Green* v. *Copperstone Ltd. Partnership*, 28 Md. App. 498, 516, 346 A.2d 686 (1975); *Timber Ridge* v. *Caldwell*, 195 N.C. App. 452, 454, 672 S.E.2d 735 (2009); *Nealy* v. *Southlawn Palms Apartments*, 196 S.W.3d 386, 389–90 (Tex. App. 2006).

Under HUD regulations, a tenancy in a federally subsidized project cannot be terminated in the absence of good cause. See 24 C.F.R. § 247.3 (2018). One such ground is material noncompliance with the rental agreement; see id., § 247.3 (a) (1); which includes "[n]onpayment of rent or any other financial obligation due under the rental agreement . . . ." Id., § 247.3 (c) (4).

Service of a valid pretermination notice is a condition precedent to a summary process action. See id., § 247.4.[12] In any subsequent summary process action, the landlord can rely only on grounds that were set forth in that notice, unless the landlord had no knowledge of an additional ground at the time the pretermination notice was served. See id., § 247.6 (b). With respect to the statement of such grounds in the pretermination notice, the regulations mandate that the notice must, among other things, "state the reasons for the landlord's action with *enough specificity so as to enable the tenant to prepare a defense* . . . ." (Emphasis added.) Id., § 247.4 (a) (2). When the reason is nonpayment of rent, the regulation provides that "a notice stating the dollar amount of the balance due on the *rent account* and the date of such computation shall satisfy the requirement of specificity . . . ." (Emphasis added.) Id., § 247.4 (e).

The question then is whether the pretermination notice served on the defendant properly states what is due on the "rent account." The notice sets forth the defendant's "rental obligations." The notice unambiguously equates this term to rent, but then indicates that rental obligations include not only delinquent rent, but also "late fees, utilities, legal fees, and any other eviction proceeding sundry cost." Although the notice lists various dollar amounts and assigns a specific due date to each amount, it does not indicate whether the amount is derived from any particular obligation, or a combination thereof.

The term "rent account" is not defined in HUD regulations, the HUD Handbook, or the HUD model lease executed in the present case. The plaintiff's view, apparently shared by the Appellate Court, is that this term encompasses any financial obligation arising under the lease. The defendant's view is that it is limited to rent charges, and only those rent charges that are a proper basis for the eviction action under state summary process law. We agree with the defendant's first point and therefore need not reach the second.

We begin with the observation that the common meaning of "rent" is a charge for the use and occupancy of the property. See, e.g., The American Heritage Dictionary of the English Language (5th Ed. 2011) p. 1487; Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 1054. This common meaning is consistent with Section 8 law, under which the tenant's rent is for a fixed amount, set in relation to the tenant's income. See 42 U.S.C. § 1437a (a) (1) (2012). It is also consistent with the definitions of various types of rent in the HUD Handbook.[13] See HUD Handbook, supra, glossary; see also, e.g., id., p. 6 ("Contract [r]ent" is defined as "[t]he rent HUD or the Contract Administrator has approved for each unit type covered under an assistance contract. The rent may be paid by the tenant, HUD, or both. Refer to the project's rental schedule [Form HUD-92458] or Rental Assistance contract for exact amounts.").[14] Although there is some indication in one type of rent defined in the HUD Handbook's glossary that rent may include utilities; see id., p. 23 (defining "[m]inimum [r]ent" as "the tenant's contribution for rent and utilities");[15] and in the HUD form used to calculate the rent schedule; see Form HUD-92458, "Rent Schedule Low Rent Housing" (November, 2005); no definition suggests that rent may include late fees or attorney's fees. Unlike private parties, landlords receiving subsidies from HUD are not free to define "rent" as they see fit.

Further support for a narrow construction of the term rent is found in the federal regulations distinguishing between nonpayment of rent and "any other financial obligation" due under the rental agreement as a ground for termination. See 24 C.F.R. § 247.3 (c) (4) (2018) (citing nonpayment of rent "or" other financial obliga-

tion under lease). Nonpayment of either may demonstrate material noncompliance with the rental agreement. Although an eviction action may be brought based on the failure to pay other financial obligations, if permitted under the agreement, such an action would not be one for nonpayment of "rent." It so happens that the HUD model lease expressly provides that "[t]he [l]andlord may not terminate this [a]greement for failure to pay late charges, but may terminate this [a]greement for [nonpayment] of rent . . . ."

A narrow construction of the term rent also is consistent with the manner in which rent is defined elsewhere in federal regulations applicable to subsidized housing, albeit not to privately owned property. Regulations applicable to the Public Housing Agency distinguish "[t]enant rent," defined as "[t]he amount payable monthly by the family as rent to the unit owner"; 24 C.F.R. § 5.603 (b) (2018); from other payments due under the lease. See id., § 966.4 (b) (listing as payments due under lease: [1] tenant rent; [2] charges for maintenance and repair beyond normal wear and tear, and excess utilities; [3] late payment penalties; [4] and security deposits). Additionally, lease agreements may not include a provision providing "that the tenant agrees to pay attorney's fees or other legal costs whenever the landlord decides to take action against the tenant even though the court determines that the tenant prevails in the action." Id., § 966.6 (h). Such an exclusion plainly indicates that such fees are not considered "rent." Consistent with this narrow construction, other jurisdictions have defined "tenant rent" in accordance with the common meaning, and have refused to construe it more expansively to include charges for utilities, repairs, late fees, or attorney's fees. See *Miles* v. *Metropolitan Dade County*, 916 F.2d 1528, 1532 n.4 (11th Cir. 1990), cert. denied, 502 U.S. 898, 112 S. Ct. 273, 116 L. Ed. 2d 225 (1991); *In re Parker*, 269 B.R. 522, 533 (D. Vt. 2001); *Housing Authority & Urban Redevelopment Agency* v. *Taylor*, 171 N.J. 580, 591–94, 796 A.2d 193 (2002).

Although the Appellate Court dismissed as irrelevant case law that construed HUD regulations applicable to public housing, we view this law as persuasive because it is consistent with every other relevant source and because the HUD provisions governing subsidized housing all serve the same purpose of ensuring affordable housing to low income families. See *Food & Drug Administration* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) ("[a] court must therefore interpret the statute as a symmetrical and coherent regulatory scheme . . . and fit, if possible, all parts into an harmonious whole" [citation omitted; internal quotation marks omitted]).

Finally, we observe that a narrow construction of "rent account," consistent with the meaning of "rent,"

furthers the purpose of the specificity requirement of a pretermination notice, to "enable the tenant to prepare a defense . . . ." 24 C.F.R. § 247.4 (a) (2) (2018). A defense to nonpayment of a financial obligation may vary depending on the nature of the obligation and its source (lease or otherwise), as well as the amount claimed to be owed.[16] The inclusion of extraneous and irrelevant charges undoubtedly can inhibit a tenant from preparing his or her defense. So too can the failure to specify the particular amount claimed as unpaid rent. Cf. *Swords to Plowshares* v. *Smith*, 294 F. Supp. 2d 1067, 1073 (N.D. Cal. 2002) (addressing specificity requirement when nuisance was alleged as ground for eviction); *Edgecomb* v. *Housing Authority*, 824 F. Supp. 312, 315 (D. Conn. 1993) (addressing specificity requirement when criminal activity was alleged as ground for eviction). It is not the tenant's obligation to ferret out the particulars. The regulations place that obligation squarely and exclusively on the landlord.

If we were to conclude otherwise, we would ignore "that occupancy in a subsidized housing project is in the nature of a welfare entitlement and that tenants in these units are entitled to basic substantive and procedural protections." "Evictions from Certain Subsidized and HUD-Owned Projects," 41 Fed. Reg. 43,330, 43,331 (September 30, 1976); see *Goldberg* v. *Kelly*, 397 U.S. 254, 261–63, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (recognizing welfare benefits as right, not privilege, entitling beneficiary of welfare benefits to procedural due process protection). These basic due process protections include not only notice of termination of welfare benefits, but "effective notice," by providing "enough information to understand the basis for the [termination] . . . ." (Citation omitted.) *Kapps* v. *Wing*, 404 F.3d 105, 124 (2d Cir. 2005). These protections are especially important because the tenant's dispossession results in the loss of the subsidy and, in turn, affordable housing, placing some low income families at risk of homelessness. See 42 U.S.C. § 1437f (a) (2012) (purpose of federal rental assistance program is to aid "low-income families in obtaining a decent place to live"); see also Task Force on the Civil Right to Counsel, Boston Bar Assn., "The Importance of Representation in Eviction Cases and Homelessness Prevention" (March, 2012), Appendix A, pp. 1–3, available at http://www.bostonbar.org/docs/default-document-library/bba-crtc-final-3-1-12.pdf. Wrongful termination of a subsidized tenancy may cause irreparable harm. See, e.g., *Caulder* v. *Durham Housing Authority*, 433 F.2d 998, 1003 (4th Cir. 1970) (recognizing that wrongfully evicted tenant is, "by definition, one of a class who cannot afford acceptable housing so that he is condemned to suffer grievous loss, but should it be subsequently determined that his eviction was improper the wrong cannot be speedily made right because of the demand for low-cost public housing and the likelihood that the space

from which he was evicted will be occupied by others" [internal quotation marks omitted]), cert. denied, 401 U.S. 1003, 91 S. Ct. 1228, 28 L. Ed. 2d 539 (1971); National Low Income Housing Coalition, "The Gap: A Shortage of Affordable Homes" (March, 2019) p. 7 (estimating that Connecticut has only thirty-eight affordable rental units for every 100 extremely low income households), available at https://reports.nlihc.org/sites/default/files/gap/Gap-Report 2019.pdf.

Having determined that in order to comply with title 24 of the Code of Federal Regulations, § 247.4, the plaintiff was required to specify the alleged dollar amount of unpaid rent in the pretermination notice, it is apparent that this requirement was not met in the present case. The notice, by its own terms, is not limited to unpaid rent. Even if we were to accept the plaintiff's dubious overinclusiveness argument (i.e., that a notice that provides more information than that required is not defective), the notice still would be defective. The notice does not designate which of the charges are assigned to rent and which are assigned to obligations other than rent. Cf. *Ford Motor Credit Co.* v. *Milhollin*, 444 U.S. 555, 568, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980) (The court stated in relation to the Truth in Lending Act, 15 U.S.C. § 1601 et seq. [1976]: "The concept of meaningful disclosure . . . cannot be applied in the abstract. Meaningful disclosure does not mean more disclosure. Rather, it describes a balance between competing considerations of complete disclosure . . . and the need to avoid . . . [informational overload]." [Citation omitted; internal quotation marks omitted.]). This flaw similarly dooms the plaintiff's analogy to case law in which there is no defect when a notice to quit alleges two grounds and the plaintiff proceeds on only one in the complaint. See, e.g., *Wilkes* v. *Thomson*, 155 Conn. App. 278, 282–83, 109 A.3d 543 (2015) (no defect where one of two grounds in notice to quit turns out to be factually unsupported). The plaintiff alleged nonpayment of "rent" as the only reason for the proposed termination.

We agree with the amici curiae, groups providing services to low income families in our state,[17] that the exclusion of superfluous charges that a tenant would not need to defend against to avoid eviction is especially important in light of the lack of legal sophistication of many recipients of these notices. As the amici point out, "[a] growing body of research confirms that many low income tenants do not understand the procedural complexities of housing court. Many tenants in court face 'barriers such as low literacy, mental illness, and limited English proficiency.' [Judiciary Committee, Connecticut General Assembly, Report of the Task Force To Improve Access to Legal Counsel in Civil Matters (December 15, 2016) p. 12]. Research suggests that federal housing aid recipients are also disproportionately hindered by financial illiteracy. See [J. Col-

lins], The Impacts of Mandatory Financial Education: Evidence from a Randomized Field Study, 95 J. Econ. Behavior & Org. 146 (2013)."

The plaintiff alternatively argues that any defect in the notice is not jurisdictional. As such, it contends that the defendant should be required to demonstrate prejudice, a burden that it posits the defendant cannot meet. We disagree with the main premise of this argument.

There is a split of authority in other jurisdictions as to whether a defect in the pretermination notice deprives the court of subject matter jurisdiction, requiring dismissal of the action regardless of prejudice. Compare *Riverview Towers Associates* v. *Jones*, 358 N.J. Super. 85, 86, 817 A.2d 324 (App. 2003) (lack of jurisdiction), *Fairview Co.* v. *Idowu*, 148 Misc. 2d 17, 22–23, 559 N.Y.S.2d 925 (Civ. 1990) ("fatal" defect), and *Hedco, Ltd.* v. *Blanchette*, 763 A.2d 639, 643 (R.I. 2000) (lack of jurisdiction), with *Hill* v. *Paradise Apartments, Inc.*, 182 Ga. App. 834, 836–37, 357 S.E.2d 288 (1987) (defective notice must cause harm), *Fairborn Apartments* v. *Herman*, Docket No. 90 CA 28, 1991 WL 10962, *6 (Ohio App. January 31, 1991) (not jurisdictional), *Pheasant Hill Estates Associates* v. *Milovich*, 33 Pa. D. & C.4th 74, 76–77 (Com. Pl. 1996) (same), and *Nealy* v. *Southlawn Palms Apartments*, supra, 196 S.W.3d 392 (same).

The plaintiff reads this court's decision in *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 128, as falling into the latter camp. It is mistaken. In that case, this court stated that, when evaluating the propriety of a federal pretermination notice, "not every deviation from the strict requirements of either [state] statutes or [federal] regulations warrants dismissal of an action for summary process. When good cause for termination of a lease has clearly been shown, and when notices of termination have been sent in strict compliance with statutory timetables, a landlord should not be precluded from pursuing summary eviction proceedings because of hypertechnical dissection of the wording of the notices that he has sent." Id., 145. These statements were aimed at the question of whether there is a cognizable defect, not whether a cognizable defect is jurisdictional. Tellingly, this court treated the federal regulation under the same rubric as state statutes governing summary process. See id. (citing as support *Southland Corp.* v. *Vernon*, 1 Conn. App. 439, 452–53, 473 A.2d 318 [1984], which applied same hypertechnical standard to notice to quit). It is well settled that a notice to quit that is defective under our law deprives the court of subject matter jurisdiction over the summary process action. See *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007).

We recognize that certain inaccuracies in a pretermination notice may go to the merits and should be addressed at trial (for example, if the amount of unpaid

rent for the period at issue is incorrect, or, as is claimed in the present case, overstates the tenant's share of the rent). However, the notice must be sufficiently accurate for the tenant to understand and defend against the allegations. If a notice is inaccurate to the point that a tenant's ability to prepare a defense against the alleged reason for termination is impaired, the notice is not effective.

For the reasons previously articulated, the pretermination notice in the present case cannot be said to reflect a hypertechnical deviation from the regulatory requirements. See *Escalera* v. *New York City Housing Authority*, 425 F.2d 853, 864 (2d Cir.) ("even small charges can have great impact on the budgets of public housing tenants, who are by hypothesis below a certain economic level"), cert. denied, 400 U.S. 853, 91 S. Ct. 54, 21 L. Ed. 2d 91 (1970). As such, the Appellate Court improperly concluded that the trial court's judgment of dismissal must be reversed.

In light of this conclusion, we need not reach the defendant's claim that the notice also was jurisdictionally defective because it misleadingly included rent charges for leases that are no longer in effect and that could not be used to support a summary process action under Connecticut law. While prudent landlords would be well served by limiting their pretermination notices to the rent charges that lawfully may support the summary process action, we have no occasion to determine that question in this case.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment affirming the judgment of the trial court.

In this opinion the other justices concurred.

[1] Although federal regulations refer to the notice as a "termination notice"; 24 C.F.R. § 247.4 (2018); we use the term "pretermination" in this opinion to reflect the fact that the federal notice precedes a notice to quit, which is the sole mechanism to terminate a tenancy under Connecticut law. We note that the plaintiff also referred to the notice as such in its complaint.

[2] We note that two additional defendants, "John Doe" and "Jane Doe," who may have resided in the premises with Perkins, were also named in the complaint but are not parties to the present appeal. All references in this opinion to the defendant are to Perkins.

[3] The trial court observed: "Section 8 refers to Section 8 of the Housing Act of 1937, although what are now called Section 8 programs were not created until almost forty years later, with the enactment of the Housing and Community Development Act of 1974. Section 8, as amended, is codified at 42 U.S.C. § 1437f et seq. There are many different Section 8 programs in existence. . . . In general, the Section 8 rental assistance programs can be categorized as either tenant based or project based. There are various programs within each of these two categories, and the variations themselves have spawned subvariations and permutations. . . . [HUD] has issued publications intended to provide guidance regarding occupancy and termination issues in connection with various Section 8 programs." (Internal quotation marks omitted.)

[4] Market rent is the rent HUD authorizes the owner to collect from families ineligible for assistance. See United States Dept. of Housing & Urban Development, HUD Handbook 4350.3 Rev-1: Occupancy Requirements of Subsidized Multifamily Housing Programs (November, 2013), glossary, p. 22.

[5] It appears that a qualifying tenant's rent is capped at 30 percent of

adjusted gross income. See 42 U.S.C. § 1437a (a) (1) (2012). The model lease indicates that, annually, the landlord requests information from the tenant regarding income, family composition, and any other information required by HUD to recertify eligibility for HUD rental assistance. The landlord verifies that information and then uses it to recalculate the amount of the tenant's rent and the HUD assistance payment, if necessary. In the intervening period between annual reviews, the tenant is obligated to advise the landlord if the pertinent information changes.

[6] The basis of this amount is not established in the record. Statements by the parties' counsel at oral argument suggest that $1402 represented the market rent for the unit. The plaintiff's counsel suggested that the entire amount was owed by the defendant because she had failed to provide information or forms necessary to maintain eligibility for the subsidy. The defendant's counsel disputes that the defendant owes the entire amount but does not contend that any such overcharge would constitute a jurisdictional defect.

[7] In a footnote in its memorandum of decision, the trial court acknowledged that the parties disputed whether the defendant had discussed, or attempted to discuss, this matter with the plaintiff during the ten day period. The court explained that it had declined to hold an evidentiary hearing to resolve this dispute because its resolution of the case on other grounds rendered it unnecessary. The Appellate Court did not address this footnote when it stated that the defendant "did not discuss the possible termination of her tenancy with the plaintiff's agent during the ten day period . . . ." *Presidential Village*, *LLC* v. *Perkins*, supra, 176 Conn. App. 496.

[8] As of March 1, 2011, the defendant's one year lease converted to a month-to-month lease. In a month-to-month tenancy, "[t]he tenancy for each month is separate and distinct from that of every other month. *Welk* v. *Bidwell*, 136 Conn. 603, 607, 73 A.2d 295 [(1950)]. There is a new contract of leasing for each successive month; *DiCostanzo* v. *Tripodi*, 137 Conn. 513, 515, 78 A.2d 890 [(1951)]; and the right of tenancy ends with that month for which the rent has been paid." *Kligerman* v. *Robinson*, 140 Conn. 219, 221, 99 A.2d 186 (1953). Each month is a separate contract. Id. Our summary process law modifies the common law by permitting a landlord to terminate a month-to-month tenancy based on nonpayment of rent not only for the month in which the notice to quit is served but also for the immediately preceding month. See General Statutes § 47a-23 (d). In the present case, because the plaintiff served the notice to quit in January, 2015, it had the right to claim nonpayment of rent for December, 2014, but not for prior months.

[9] According to the trial court's decision, the plaintiff conceded during oral argument before that court that the attorney's fees were from a prior, unsuccessful action that should not have been charged to the defendant. At oral argument before this court, the plaintiff's counsel suggested that perhaps the defendant was liable for the attorney's fees. As this statement is in direct conflict with the trial court's decision, the proper time and means to have raised this matter would have been through the filing of a motion for rectification in the trial court. See Practice Book § 66-5. In the absence of any such rectification, we presume that the plaintiff did make, and is bound by, such a concession.

[10] By drawing a clear distinction between curing a default and preparing a defense, the Appellate Court appears to have implicitly rejected the possibility that the opportunity to cure may be relevant to preparing a defense to present in an eviction action. For example, equitable nonforfeiture is a defense that may apply to a summary process action premised on nonpayment of rent. See *19 Perry Street*, *LLC* v. *Unionville Water Co.*, 294 Conn. 611, 630, 987 A.2d 1009 (2010). "[T]he doctrine against forfeitures applies to a failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease." (Internal quotation marks omitted.) Id. "[T]he conduct of the [lessee] after he was informed of the nonpayment . . . is conclusive of the good faith of the [lessee] . . . and his continuous desire to avoid a forfeiture . . . ." *Thompson* v. *Coe*, 96 Conn. 644, 657, 115 A. 219 (1921). "[M]any courts have also taken into consideration the tenant's actions after receiving notice by the landlord of the termination of the lease, *looking favorably on any actions by the tenant to cure the default or evidencing an intent to prevent the forfeiture . . . .*" (Emphasis added; internal quotation marks omitted.) *19 Perry Street*, *LLC* v. *Unionville Water Co.*, supra, 634. Thus, if the lack of specificity in a notice discourages the tenant from taking steps to cure the default, it also could impair the tenant's ability to establish an equitable defense to eviction. In light of our conclusion that the inclusion

of nonrent charges rendered the notice defective, we need not determine whether a notice could be jurisdictionally defective if it is so misleading as to impair the opportunity to cure.

[11] We granted the defendant's petition for certification as to the following issues: "1. Did the Appellate Court properly reverse the trial court's holding that a federal pretermination notice for nonpayment of rent must be limited to rent charges that are a permissible basis for such an eviction under Connecticut summary process law?

"2. Did the Appellate Court properly conclude that state law is not relevant in determining whether the information provided in a federal pretermination notice is so misleading as to render it jurisdictionally defective?" *Presidential Village, LLC* v. *Perkins*, supra, 327 Conn. 974.

[12] Title 24 of the 2018 edition of the Code of Federal Regulations, § 247.4 (a), provides: "The landlord's determination to terminate the tenancy shall be in writing and shall: (1) State that the tenancy is terminated on a date specified therein; (2) state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense; (3) advise the tenant that if he or she remains in the leased unit on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant in the manner prescribed by paragraph (b) of this section."

We note that, although the defendant did not advance this ground in the trial court, it is apparent that the pretermination notice served on her clearly fails to comply with subsection (a) (1), in that it does not include a date on which the tenancy will terminate. We need not base our decision on this ground in light of our conclusion that the notice is jurisdictionally defective for another reason that was raised in the trial court.

[13] The trial court observed that, "[t]o the extent that a requirement contained in the HUD Handbook does not appear in the relevant federal regulations, it is fair to ask whether those requirements are legally enforceable against Section 8 landlords." The trial court did not decide this issue because the plaintiff did not challenge the binding nature of the HUD Handbook, many provisions of which are reflected in the HUD model lease used by plaintiff. We observe that, even when an agency handbook is not legally binding, courts have relied on the agency's interpretations of the governing law therein to the extent that such interpretations are persuasive. See, e.g., *Burroughs* v. *Hills*, 741 F.2d 1525, 1529 (7th Cir. 1984), cert. denied, 471 U.S. 1099, 105 S. Ct. 2321, 85 L. Ed. 2d 840 (1985); *Roberts* v. *Cameron-Brown Co.*, 556 F.2d 356, 360–61 (5th Cir. 1977); *Jackson* v. *Medical Board*, Docket No. CV-07-2188 SVW (RZ), 2008 WL 11378892, *4 (C.D. Cal. April 17, 2008); see also *Commissioner of Public Health* v. *Freedom of Information Commission*, 311 Conn. 262, 268 n.4, 86 A.3d 1044 (2014).

[14] This definition also conforms to state law. See General Statutes § 47a-1 (h) (defining "[r]ent" as "all periodic payments to be made to the landlord under the rental agreement").

[15] In the HUD model lease, the landlord may designate certain utilities as ones that the tenant is responsible for paying directly to the utility company or as ones that are "included in the [t]enant's rent." In the lease between the parties in the present case, gas (for hot water and heat) was included in tenant rent.

[16] As state law will be the principal source of defenses to a summary process action, it is clear that state law will be relevant in some cases as to whether a pretermination notice is sufficiently specific to allow the tenant to prepare a defense. Moreover, HUD regulations expressly acknowledge that state law applies, except if preempted. See 24 C.F.R. § 247.6 (a) (2018) ("[t]he landlord shall not evict any tenant except by judicial action pursuant to [s]tate or local law"); id., § 247.6 (c) ("[a] tenant may rely on [s]tate or local law governing eviction procedures where such law provides the tenant procedural rights which are in addition to those provided by this subpart, except where such [s]tate or local law has been preempted").

[17] An amicus brief was filed in support of the defendant by the Jerome N. Frank Legal Services Organization at Yale Law School on its behalf and on behalf of Connecticut Legal Rights Project, Connecticut Legal Services, Inc., The Connecticut Veterans Legal Center, and Disability Rights Connecticut, Inc.